The People of the State of New York ex rel. John N. Carlisle, as State Commissioner of Highways, Respondent, *v.* The Board of Supervisors of Onondaga County, Appellant.

Highways — mandamus — when writ may issue to compel board of supervisors to levy tax on towns for their respective proportion of cost of maintenance of state roads.

1. The supervisory powers of the state commissioner of highways involve wide discretion as to the construction and maintenance of the highway system of the state, and the exercise of this discretion necessarily affects the manner in which the funds to be raised by the state, counties and towns relating to such construction and maintenance shall be collected and disbursed.

2. Upon the receipt of the notice of the state commissioner of highways transmitted pursuant to section 172 of the Highway Law (Cons. Laws, ch. 25) a mandatory statutory duty, ministerial in character, devolves upon the board of supervisors, and under this duty the board is required to take such action as shall result in the levying of a tax by the towns to raise their respective proportion of the fund applicable to the maintenance of such highways. This duty is not dependent upon the acceptance of the highways by the proper officials.

*People ex rel. Carlisle* v. *Bd. of Supervisors*, 164 App. Div. 922, affirmed.

(Argued February 21, 1916; decided March 14, 1916.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 30, 1914, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the board of supervisors of Onondaga county to convene and cause certain towns in that county to levy taxes for the maintenance and repair of highways.

The facts, so far as material, are stated in the opinion.

*Herbert L. Smith* for appellant. The duty to maintain the highways did not exist until after their completion and acceptance. (Cons. Laws, ch. 25, § 172; *Brewer* v. *Bridges*, 164 Ind. 358.)

*Egburt E. Woodbury, Attorney-General (Edmund H. Lewis* of counsel), for respondent. The legislature having by section 172 of the Highway Law imposed upon the county boards of supervisors a statutory duty, ministerial in its nature, mandamus will lie to compel such performance. (*People ex rel. McLean* v. *Flagg,* 46 N. Y. 400; *People ex rel. Grannis* v. *Roberts,* 163 N. Y. 70.)

SEABURY, J. This appeal presents the question whether the state commissioner of highways is entitled to a peremptory writ of mandamus directing and requiring the board of supervisors of Onondaga county to convene and cause certain towns within that county to assess, levy and collect certain taxes for the maintenence of certain state and county highways in said towns.

The state commissioner of highways, under the existing law, has the general supervision of all highways and bridges which are constructed or maintained in whole or in part by the aid of state moneys. (Highway Law [Cons. Laws, ch. 25], section 15.) The supervisory powers of this official involve wide discretion as to the construction and maintenance of the highway system of the state and the exercise of this discretion necessarily affects the manner in which the funds to be raised by the state, counties and towns relating to such construction and maintenance shall be collected and disbursed.

On October 28, 1912, the state commissioner of highways transmitted to the clerk of the board of supervisors of the county of Onondaga a statement in writing specifying the number of miles of improved state and county highways in each town of said county and the proportionate amount which each town was required to pay into the county treasury on account of the maintenance of such state and county highways within said towns for the ensuing year, 1913. This notice was given pursuant to section 172 of the Highway Law (Laws of 1909, ch. 30, as amended by Laws of 1912, ch. 83).

In assessing the tax for highway maintenance in December, 1912, the board of supervisors omitted four of the highways referred to in this statement. The refusal of the appellant to include the amount required for the maintenance of these highways in the tax for 1913 is based upon the contention that four of said highways had not been completed and accepted by the proper officials upon the date of the receipt of the statement of the state commissioner of highways. On behalf of the respondent it is contended that upon the receipt of the notice of the state commissioner of highways transmitted pursuant to section 172 of the Highway Law, a mandatory statutory duty, ministerial in character, devolved upon the board of supervisors and under this duty the board of supervisors were required to take such action as should result in the levying of a tax by the towns to raise their respective proportion of the fund applicable to the maintenance of said highways. These contentions present for consideration the question whether the duty imposed by statute upon the board of supervisors is a mandatory duty which is ministerial in character or whether any measure of discretion resides in the board of supervisors in such cases to determine whether the amount required shall be raised.

Section 170 of the Highway Law provides for the maintenance and repair of improved state and county highways in towns. It provides that this duty "shall be under the direct supervision and control of the commissioner of highways and he shall be responsible therefor." It is necessary particularly to consider sections 134 and 172 of the Highway Law (Cons. Laws, ch. 25). Section 134 of the Highway Law provides as follows:

"§ 134. Acceptance of county highway.— Upon the completion of a county highway or section thereof, constructed or improved under a contract let as provided in this article, in accordance with the terms and provisions of such contract and with the plans and specifications forming a part thereof, it shall be the duty of the state

superintendent of highways to so certify to the commission, and if the commission shall approve, the commission shall inform the district or county superintendent and the board of supervisors of the county in which such highway or section thereof is located in writing, that it will accept the work on behalf of the state and county within twenty days from the date of such notice, unless protest shall be filed with him in writing by the district or county superintendent or by the chairman of the board of supervisors. In case a protest is filed the commission shall hear the same and if it is sustained it shall delay the acceptance of the highway or section thereof until it be properly completed.   Upon the proper completion of such highway or section thereof and after filing the notice above given it shall be deemed to have been accepted by the board of supervisors of such county and thereafter it shall be maintained as provided in this chapter." (Amd. L. 1911, ch. 646.)

Section 172 of the Highway Law provides as follows:

"Cost to town for maintenance of state and county highways.— Each town shall pay for the maintenance and repair of state and county highways each year the sum of fifty dollars for each mile or major fraction of a mile of the total mileage of state and county highways within the town, each incorporated village shall pay for such maintenance and repair at the rate of one and one-half cents for each square yard of surface of such improved highway maintained by the state within its corporate limits, and each city of the third class shall pay for such maintenance and repair at the rate of three cents for each square yard of surface of such improved highway maintained by the state within the incorporated limits of such city.   On or before the first day of November in each year the commission shall transmit to the clerk of the board of supervisors of each county, to the board of trustees of each village and to the common council of said city a statement specifying the number of miles of improved

state and county highways in each town, the number of square yards of surface of such improved highway as hereinbefore provided in each village or said city, in such county and the amount which each of such towns, villages and cities, is required to pay into the county treasury on account of the maintenance of state and county highways and a copy of such statements shall be forwarded to the county treasurer. The board of supervisors of the county, the board of trustees of an incorporated village and the common council of said city shall cause the amount to be paid by each town, incorporated village and said city of the county, to be assessed, levied and collected therein in the same manner as other town, village, and city charges, in the several towns, villages and cities of the third class, and such amount when collected shall be paid into the county treasury to the credit of the fund for the maintenance of state and county highways in the several towns, incorporated villages and said cities of the county." (Amd. L. 1912, ch. 83.)

These sections of the Highway Law define a consistent method of procedure to be followed in reference to the maintenance and repair of state and county highways and the manner in which the state and the towns in which the highways are located shall pay their respective proportions of the expense incurred. Section 134 and the other sections of the Highway Law, which relate to the construction and maintenance of highways, contemplate that the state shall project the improvement and employ the contractor, and that during the progress of the work the duties and powers of the towns shall be suspended until the work is accepted by the state. (*Farrell* v. *Town of North Salem*, 205 N. Y. 453, 456.) After the state commissioner of highways has been notified of the completion of a county highway he may, if he shall approve, inform the board of supervisors that he " will accept the work on behalf of the *state and county* " within twenty days unless protest shall be made. If a protest is filed, it

is the duty of the state commissioner "to hear the same," and, if he sustains the protest, acceptance is delayed. He may delay acceptance until the highway is "properly completed," but the state commissioner of highways, and not the board of supervisors, has the power to determine when the highway is "properly completed." When he has heard the protest, if any, and has determined that the highway has been properly completed, and gives the notice required by section 134, the highway "shall be deemed to have been accepted by the board of supervisors of such county, and thereafter it shall be maintained as provided in this chapter." The language of this section makes it clear that the legislature intended that the state commissioner of highways shall determine when the highways are properly completed, and that when he gives the notice required by section 134 and determines that the highway is properly completed it is to be deemed as a matter of law "to have been accepted by the board of supervisors." From that time on the local authorities resume their control over it and "thereafter it shall be maintained" in the manner provided by law. (*Farrell* v. *Town of North Salem, supra,* at pages 456, 457.) Section 134 has no relation to the duty of the board of supervisors to raise the expenses of maintaining the highway before its acceptance by the state. It accords to the board of supervisors an opportunity to protest against the acceptance of the highway when it has not been properly completed; gives to the board an opportunity to be heard upon its protest and makes it the duty of the board of supervisors to maintain the highway after it has been accepted. There is nothing in this section which relieves the board of supervisors from the duty imposed by section 172 of the Highway Law of raising the necessary fund for the maintainance of the highway. Section 134 relates to the physical maintenance of the highway but it has no relation to the duty of the board of supervisors to cause the fund necessary for the maintenance of that

highway to be raised.    This latter duty is imposed and
defined in·section 172 of the Highway Law.    The first
sentence of section 172 clearly imposes upon each
town the duty of paying the amount specified for the
maintenance and repair of state and county highways.
That section also makes it the duty of the state com-
missioner of highways to transmit to the board of
supervisors of each county a statement of the number of
miles of highway improved, and the amount which each
town is required to pay into the county treasury.    The
same section also provides that the board of supervisors
"shall cause the amount to be paid by each town," and
the manner in which the amount needed is to be collected
is specifically defined.    When the state commissioner of
highways transmits to the board of supervisors the state-
ment required by section 172 the mandatory provision of
that section requires that the board of supervisors "shall
cause the amount to be paid by each town."    The duty of
the board of supervisors to cause the proportionate amount
to be paid by each town arises from the fact that the
notice or statement required by section 172 has been given.
When the notice required by section 172 is given the
statute contemplates that the board of supervisors shall
make provision for collecting the sum required from
the towns.    The notice or statement referred to in sec-
tion 172 is to be transmitted to the board of super-
visors "on or before the first day of November in each
year."    The purpose of this provision is clear when it
is read in connection with section 59 of the Tax Law,
which requires that the general tax levy shall be made
"on or before December 15th of each year."    It was
doubtless in view of this latter requirement that the
legislature provided that the notice or statement required
to be given pursuant to section 172 should be given
on or before November 1st of each year.    The evident
purpose was to permit the notice or statement to be
given in time to enable the board of supervisors to

include the amount shown to be necessary by the notice or statement of the state commissioner of highways in the general tax levy which the law requires to be made on or before December 15th of each year. The duty of the board of supervisors to cause the amount required to be collected arises from the fact that the state commissioner of highways gives the notice specified in section 172 of the Highway Law. The question whether the highway has been "properly completed" is not then an open one so far as the duty of the board of supervisors, imposed by section 172, is concerned. The fact that the highway has not yet been accepted furnishes no reason why the fund necessary to be raised as the proportionate share due from the towns should not be collected. That there is good reason for not making the duty of the board of supervisors to collect the necessary funds by taxation dependent upon the acceptance of the highways is well illustrated by the facts of this case. The county highway was accepted January 8, 1913, and the towns have had the benefit and use of the highways for substantially the entire year. The notice contemplated by section 172 was given to the board of supervisors by the state highway commissioner on October 28, 1912, and the general tax levy was made by the board of supervisors, as required by law, on December 15, 1912. The general tax levy should have included the items for maintenance and repair which the notice of the state highway commissioner, of October 28, 1912, showed would be necessary. The board of supervisors having failed to include the amount which the statute required should be included, a peremptory mandamus should issue directing them to do now what they should have done on December 15, 1912.

It follows that the order appealed from should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, CARDOZO and POUND, JJ., concur.

Order affirmed.