MARY J. BUCKLES, as Administratrix, etc., of WILLIAM
  BUCKLES, Deceased, Appellant, *v.* THE STATE OF NEW YORK,
  Respondent.

Third Department, December 28, 1916.

State — highways — extra work by State contractor performed as
  directed in writing by Department of Highways — refusal of State
  authorities to execute supplemental contract — when contractor
  entitled to recover — failure to give notice of intention to file claim.

Where a contractor engaged in the construction of a State highway called
  the attention of the Department of Highways to the fact that certain
  extra work was necessary in order that the highway should be properly
  constructed and he was directed in writing by the department to pro-
  ceed and do the necessary work and that a supplemental contract there-
  for would be executed after the work was finished, the contractor,
  having completed the work which was approved by the State authori-
  ties, is entitled to recover for the extra work, although the successor of
  the Commissioner of Highways subsequently refused to execute the
  supplemental contract.

Where, on the trial before the Court of Claims, the Attorney-General
  admitted that the only legal issue was the question as to whether the
  claimant was entitled to recover owing to the fact that the supplemental
  contract had not been executed and no other question was litigated, it
  was error for the Court of Claims to find against the claimant upon the
  ground that a notice of an intention to file the claim was not given
  within the time required by law.

LYON and COCHRANE, JJ., dissented, with opinion.

APPEAL by the claimant, Mary J. Buckles, as administra-
trix, from a judgment of the Court of Claims, entered in the
office of the clerk of said court on the 7th day of June, 1916,
dismissing her claim.

*O. A. Dennis,* for the appellant.

*Egburt E. Woodbury, Attorney-General [Edmund H.
Lewis, Deputy Attorney-General,* of counsel], for the
respondent.

KELLOGG, P. J.:

The contract was fully performed by the contractor Novem-
ber 12, 1912. After he had entered upon the work it was dis-

covered that some extra filling was required on the highway, before the other work was done upon it. The contractor called the attention of the Department of Highways to that fact. It, in writing, directed him to go on and do the necessary work; that a supplemental contract would be executed as soon as the work was done. He later wrote the department asking that the supplemental contract be furnished. A little out of patience, the superintendent of repairs wrote him that he had been informed that he must do the necessary filling and must do a first-class job; must get the necessary stone, and that the men in charge of the contract were to keep track of the same and there would be a supplemental agreement for it, and told him that if he could not do the work as required he better relinquish the contract. He later again asked for the supplemental agreement, and was met with the written reply that it could not be furnished until the work was done. After the work was done the department prepared the supplemental contract, which was signed by the contractor and by the superintendent of repairs on the 11th of November, 1912. December 2, 1912, a final estimate approving of the work and certifying the amount due was executed by the inspector, the superintendent of repairs and the first deputy commissioner of highways. May 3, 1913, the work was again approved and final payment recommended. The letters to the department and from the department show clearly that the work was done pursuant to written directions. While the formal supplemental contract was not made before the work was done, the writings, fairly interpreted, show that the terms and conditions for the extra work were in substance substantially agreed upon in writing, and the supplemental contract, as executed, confirms the previous writings. It is immaterial, under all the circumstances, that this understanding and agreement was not reduced to the form of a supplemental contract. Payment was promised from time to time, but was delayed for an alleged want of funds, or other reasons. February 10, 1914, the new Commissioner of Highways wrote the claimant that he knew nothing about the matter, and he could not sign the supplemental agreement, and that the claimant must go to the Court of Claims. This was the first suggestion that any question

was made about the claim. We have seen that the contractor, under duress, was required to do the work without a supplemental contract.

A corporation or a private person could not by its agents procure work to be done under similar circumstances and avoid payment. The object of requiring a supplemental agreement for work is to make certain that the State shall not be imposed upon and to guard against fraud. There is no such question here, for if there is any wrong it is not upon the part of the claimant. He was directed in writing by the department to do the work, and did it accordingly. The department accepted the work and agreed to pay for it, and plaintiff should not lose the money justly her due simply because there was a change of administration in the Highway Department and the new Commissioner was not interested in carrying out the contracts made by the old department, or did not feel called upon to read the correspondence, ascertain the facts and approve of the supplemental contract which had been executed by the representatives of the Highway Department. The claim is so just; the neglect of the State to pay it so unreasonable, that it is unnecessary to cite authorities or to go into a discussion to show that the State should pay this claim.

Apparently the Court of Claims felt that the claim should be paid, but found against the claimant upon the ground that she had not given a notice of an intent to file the claim within the time required by law. At the beginning of the trial the attorney for the claimant stated the ground of the claim. The representative of the Attorney-General's office stated that the office had diligently inquired into it and found that the work had been done according to contract, and said: "Now this claim presents to the court one question of law, and that is all, because the facts are practically admitted." Again: "There is no question that the quantities are all that the claimant claims. The only question presented to the court is as to whether or not the claimant can recover for this extra labor and material where no supplemental agreement in writing covers it." That was the only question tried; everything else was admitted out of the case, and it was too late after that for the Court of Claims to dismiss the claim upon the ground that there was

no proof that a notice to present a claim was filed. The State should be held to the admission made by it upon the trial. The claim is so just that if the Attorney-General had asked to withdraw the admission the court would have been justified in refusing its consent.

We conclude that under the peculiar circumstances of the case the contractor and his administratrix have fully complied with the terms of the contract and that the extra work was done by a contract binding upon the State. At this time the State cannot be heard to deny that such a supplemental contract was made. Considering the manner in which the case was tried it was error for the court to dismiss the claim upon the ground stated by it. The determination of the Court of Claims should, therefore, be reversed, and judgment directed for the plaintiff for the amount claimed, with proper interest thereon.

All concurred, except LYON, J., who dissented, in opinion, in which COCHRANE, J., concurred.

LYON, J. (dissenting):

So far as appears no rejection of the claim had been made prior to February 10, 1914, when the State Commissioner of Highways then in office refused to sign a separate agreement relating to the work in question, which had been done during the administration of a predecessor in office, and so notified the appellant's attorney in writing, stating he saw no way except for the claimant to go to the Court of Claims. Evidently the appellant's attorney understood the suggestion made by the Commissioner of Highways, as on March thirtieth following he filed the claim with the clerk of the Board of Claims, but did not file the claim or a notice of intention to file it in the office of the Attorney-General, as also required by section 264 of the Code of Civil Procedure; and neither a copy of the claim nor of an intention to file it has ever been filed in the Attorney-General's office. Had the appellant's attorney so done, within six months following the receipt of the communication from the State Commissioner of Highways, I think we might be warranted in holding that a notice of intention had been filed in time. Although the claim may concededly be a just one,

the requirement of the section is necessary for the protection of the State. An almost unbroken line of authorities is to the effect that unless such notice of intention shall be duly filed the claim cannot be maintained against the State.

The possible remedy of the claimant is through an act by the Legislature permitting the Court of Claims to hear and determine the claim notwithstanding the failure to file notice of intention to file claim as required by law.

COCHRANE, J., concurred.

Judgment reversed and judgment directed for the plaintiff for the amount claimed, with proper interest thereon.