LANGAN CONSTRUCTION CORPORATION, Claimant, *v.*
STATE OF NEW YORK.

## Claim No. 14927.

(Court of Claims, State of New York, January, 1920.)

Contracts,— what constitutes a breach by the state of a highway
contract.

Where the state, after having entered into a highway con-
tract by which it guaranteed the sufficiency of the macadam
base for the asphalt, determines that such base is insufficient,
it must do one of three things:

1. Permit the contractor to make the base sufficient, under a
supplemental contract;

2. Perform such work itself, or by an independent con-
tractor;

3. Cancel the contract and thereby become liable to the con-
tractor for damages.

Claimant by its contract with the state of New York to do the
asphalt work in the improvement of a highway, did not agree
that the state might make such changes in the plans and
specifications as to arbitrarily and unreasonably change the
character of the entire work which claimant had contracted to
perform. The necessity claimed to exist for a refusal to per-
mit the construction of the asphalt section was that the
macadam base for the asphalt was not sufficient, but upon the
terms proposed by claimant it could have been furnished within
the amount of the estimated cost of the completed highway.
Claimant for six months had been preparing to perform its
contract but on the eve of commencing the work, the commis-
sioner of highways, considering the proposed terms of claimant
too high, pretended to deem that necessity existed for the
abandonment of that part of the improvement, and amended
the plans and specifications by cutting out forty-three per cent
of the work, thus changing the whole nature of the contract.
*Held,* that the action of the commissioner of highways was
capricious, arbitrary and unreasonable, and constituted a breach
of the contract at claimant's election, and that its position that
the state had invalidated the contract, notwithstanding a particu-
lar provision thereof, was fully warranted.

12

It appearing that claimant would have been able to perform the contract for $13,000 less than the state had agreed to pay it for the work and material, it was entitled to judgment against the state for that sum plus $5,709.54 expended by claimant in preparing to perform the contract, but without interest.

CLAIM for breach of highway contract by the state.

James J. Barrett, for claimant.

Henry P. Nevins, deputy attorney-general, for state of New York.

ACKERSON, P. J. The facts of this case are briefly as follows: The claimant is a domestic corporation. On November 1, 1915, it entered into a contract with the state of New York for the improvement of a highway in the county of Erie known as " Transit, Part four, Highway No. 1334." The state thereby agreed to pay it for the necessary labor and materials to perform the work mentioned in the contract the sum of $70,033.09.

The highway to be improved was four and thirty one-hundredths miles in length and divided into three parts, as follows: One and eighty-five one-hundredths miles water-bound macadam, one and thirty-three one-hundredths miles concrete, one and twelve one-hundredths miles asphalt to be laid on an old macadam road.

On April 6, 1916, the claimant notified the state that it was ready to proceed with the work. Previous to this time it had moved its asphalt plant there from Alexandria, Va., leased land from the New York Central Railroad Company on which to operate it and made ready to perform the work it had contracted to do.

The state, after waiting twenty days, informed claimant that the macadam base for the asphalt was

not sufficient, and submitted proposed prices for making it sufficient. The claimant replied the next day, April 27, 1916, that it could not do the additional work for the price mentioned by the state, and made an offer to do it for a higher price.

On April twenty-eighth, the next day, claimant was notified by the division engineer that the matter of the additional work had been referred to the Albany office and that if the department did not wish to pay a higher price for the additional work than he had already offered there was one other course open, and that was the cancellation of that part of the contract calling for the asphalt.

Claimant replied the next day after that, April twenty-ninth, that it objected to the cancellation of the asphalt portion of the contract and would be glad to discuss the matter of price to be stipulated in the supplemental contract for the additional work.

Nothing more was heard from the state until May tenth, when claimant and its surety were notified by the state to proceed with the macadam and concrete portions of the highway and that the asphalt section was eliminated.

This order of the state virtually destroyed the contract the claimant had entered into. It removed from the contract most, if not all, of the work on which the claimant could make any profit. The part of the work thus eliminated constituted forty-three per cent of the work under the contract. Of the $70,033.09 which the claimant was to receive for the work included in the contract, $30,739.50 of it was for building the asphalt section eliminated, and on which work claimant would have made a profit of about $13,000 if he had been allowed to carry out his contract.

The claimant refused to go on with the work with the asphalt portion thus eliminated, and on June 2,

1916, the state commission of highways made an order formally cancelling the whole contract.

The state attempts to justify the action of its officers in relation to this contract by contending that it had the right to eliminate the asphalt section of the road under section 4 of the contract, which reads as follows:

" 4. The said work shall be performed in accordance with the true intent and meaning of the plans and specifications therefor, which are hereby referred to and made a part of this contract. The State, however, reserves the right to make such additions, deductions or changes as it deems necessary, making an allowance for deductions therefor at the price named in the proposal for this work and this contract shall in no way be invalidated thereby and no claim shall be made by the contractor for any loss of·anticipated profits because of any such change or by reason of any variation between the approximate quantities and the quantities of the work as done. It is further agreed that an increase in quantities or extra work performed or extra materials furnished shall be covered by a supplemental contract, as provided in chapter 30 of the Laws of 1909, and the amendments thereto, and that no claim will be made by the contractor for any such items performed or furnished before such supplemental contract shall have been approved by the Comptroller of the State of New York and executed by the Commissioner of Highways as provided by chapter 342 of the Laws of 1913 and the amendments thereto."

It further contends that the case of *Kinser Construction Co.* v. *State of New York,* 204 N. Y. 381, sustains it in this view. We are unable to agree with this contention of the state.

The state was bound by its contract and by it guar-

anteed the sufficiency of the macadam base for the asphalt. *MacKnight Flintic Stone Co.* v. *City of New York,* 160 N. Y. 72.

When it determined that such macadam base was insufficient, it seems to us that it must have done one of three things, viz.:

(1) Permitted claimant to make it sufficient under a supplemental contract;

(2) Performed such work itself or by an independent contractor;

(3) Cancelled the contract and thereby became liable to claimant for its damages.

The deficient macadam base, if it was deficient, could have easily been made sufficient by the state at an expense that would have kept the whole contract within the engineer's estimate. The estimate of the state's engineer of the cost of the work to be done under this contract was $83,807.50. The amount of this claimant's bid and the contract price with it for doing the work was $13,774.41 less than that, or $70,033.09.

Section 4 of the contract clearly cannot protect the state in such a case as this, as we read the cases. *National Contracting Co.* v. *Hudson River Water Power Co.,* 192 N. Y. 209. Neither does the opinion in the *Kinser Construction Co. Case, supra,* disclose any reason why that case should be followed as a precedent in a case such as the one we are now considering. Here was a matter which lay right on the surface. There was no reason why the state should not have fully understood what it was doing when it contracted with claimant to place asphalt on this old macadam highway. There was no reason, when it changed its mind about it, why the weakness that it then claimed to exist should not have

been remedied and the claimant permitted to go on with its contract.

There was no necessity here to warrant the state in suddenly confronting the contractor without warning with an entirely different situation than he had contracted to meet nearly six months before.

For these six months the claimant had been preparing to perform a contract from which it hoped to derive considerable profit. Suddenly, on the eve of commencing the work, forty-three per cent of the contract is cut out, the whole nature of it is changed, and the claimant is confronted with the proposition of being compelled to perform a contract such as he never had in mind when he bid, and one which could bring him but little, if any, profit.

There must be a rational and just ground for deeming a change necessary. The contractor is protected against arbitrary, capricious and unreasonable action by the officers of the state. *Kinser Construction Co.* v. *State of New York,* 204 N. Y. 381–391. Claimant has not agreed that the state might make such changes in the plans and specifications as to change arbitrarily and unreasonably the character of the entire work which it had contracted to perform. *National Contracting Co.* v. *Hudson River Water Power Co., supra.* There is here not even pretense that necessity existed for refusal to permit the construction of the asphalt section of the highway. The necessity claimed to exist was for a more sufficient base for such highway, which upon the terms proposed by claimant could have been furnished within the amount of the estimate of the cost of the completed highway. Because the commissioner of highways considered the terms proposed by claimant too high, he pretended to deem that necessity existed for the abandonment of that part of the project, and so amended the plans

and specifications as to change utterly and unreasonably the nature and character of the work which claimant had contracted to perform. Such action was capricious, arbitrary and unreasonble and violative of claimant's rights under its contract, and constituted a breach of the contract, if claimant elected so to treat it.

We are of the opinion that under the particular circumstances of this case, therefore, the claimant was fully warranted in taking the position that the state by its action had invalidated the contract, notwithstanding section 4 thereof. *People ex rel. Graves* v. *Sohmer,* 207 N. Y. 458; *National Contracting Co.* v. *Hudson River Water Power Co., supra; Baker* v. *State of New York,* 77 App. Div. 528; *Dunning* v. *County of Orange,* 139 id. 249; *McMasters* v. *State of New York,* 108 N. Y. 542; *County of Cook* v. *Harms,* 108 Ill. 151.

The state having, therefore, in our judgment, invalidated this contract without good cause and through no fault of the claimant, becomes legally liable to the claimant for the damages it has suffered by reason of the breach of the contract. The amount of damages in such a case as this is fixed by the amount of profit that the claimant would have made if it had been permitted to perform the contract. *Masterton* v. *City of Brooklyn,* 7 Hill, 61; *Oswego Falls P. & P. Co.* v. *Stecher Litg. Co.,* 215 N. Y. 98; *Connolly* v. *State of New York,* 11 St. Dept. Rep. 116.

From all the evidence in the case we have reached the conclusion that the claimant would have been able to perform this contract for $13,000 less than the state had agreed to pay it for such work and material. It should have judgment against the state, therefore, for that amount, plus the sum of $5,709.54 expended by it in preparing to perform this contract, and for which it has never been reimbursed.

**184**          MATTER OF MOLLER.

Surrogate's Court, New York County, January, 1920.   [Vol. 110.

The amount due claimant here could not be computed with that certainty which would bring it within the rule permitting us to allow interest on the award herein and for that reason interest is refused. *Faber v. City of New York,* 222 N. Y. 262.

Cunningham, J., concurs.