THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EDWARD
  B. ROCKWOOD and Another, as Executors, etc., of A. J. ROCK-
  WOOD, Deceased, and Another, Defendants.

Supreme Court, Oneida County, December 29, 1925.

**Highways — action by State to recover cost of completing highway con-
  tract in excess of amount in original contract — Commissioner of
  Highways, pursuant to Highway Law, may cancel highway contract
  in his discretion — cancellation by said Commissioner precludes revival
  of contract by successor — State not entitled to recover excess of amount
  stipulated in original contract — under Highway Law, § 148, acquiring
  rights of way is not mandatory as condition precedent to letting contract.**

The Commissioner of Highways, pursuant to the provisions of the Highway Law,
  may cancel a highway construction contract where he honestly believes that
  it will be for the best interests of the State.
In the absence of proof of bad faith or collusion, the cancellation of a highway
  construction contract by the Commissioner of Highways in office on December
  26, 1922, said cancellation having been acquiesced in by the other parties
  interested, put an end to the contract and relieved both parties thereto from
  liability thereon, notwithstanding the fact that the successor to the Commis-
  sioner canceling the contract rescinded the order, proceeded with the work of
  construction and subsequently made demand to recover the cost of completing
  the contract in excess of the amount stipulated in the original contract.
The acquiring of title to the necessary rights of way prior to advertisement for
  proposals for construction work, pursuant to section 148 of the Highway Law,
  is not mandatory as a condition precedent to the letting of a contract for
  highway construction, and the only issue arising, in an action by the State to
  recover the cost of completing a highway contract in excess of the amount in
  the original contract, is whether or not, because of such failure, the contractor
  was so impeded in his work that he was reasonably entitled to abandon his
  contract, and, in fact, did abandon it for that reason.

ACTION to recover cost of completing highway contract in excess
of amount stipulated in original contract.

Trial by the court without a jury, a jury trial having been
waived.

*Albert Ottinger, Attorney-General,* for the plaintiff.

*Parsons, McClung & Rose,* for defendants Rockwood.

*Ainsworth, Sullivan, Wheat & Archibald,* for defendant Fidelity
and Casualty Company.

CHENEY, J. This case was tried at the Oneida Trial Term in
October, 1924, but at the request of counsel a decision was reserved
pending the determination of an appeal in another case which
would be determinative of one of the defenses interposed here.

That appeal has just been disposed of, and this case is now submitted for determination.

There is no dispute as to the facts. The State, through its Department of Public Works, Bureau of Highways, on July 24, 1922, entered into a contract with the A. V. Leo Construction Company for the construction of a public highway, known as the Madison-Bridgewater, Part 2, Highway 8124, Oneida County, N. Y. The defendant surety company is the surety on the bond of the contractor for the faithful performance of its contract. This contract provided for the completion of the work thereunder by November 15, 1922. No work under the contract was ever performed by the contractor. By an assignment, approved by the State Commissioner of Highways October 16, 1922, the contract was assigned by the A. V. Leo Construction Company to A. J. Rockwood. This assignment was consented to by the surety. Rockwood died November 3, 1922, without having performed any of the work required by the contract, and the defendants Rockwood were subsequently appointed executors of his estate. On December 8, 1922, the executors of his estate requested of the Commissioner of Highways that an equitable arrangement be made to release the estate from this contract and all obligations in connection with it. To this the Commissioner replied suggesting that the proper way to handle the matter would be to assign the contract to some responsible contractor. Evidently some further negotiations were had, and on December 26, 1922, the Commissioner of Highways issued an order reciting the making of the contract, the assignment to Rockwood, his death, that his heirs are not in a position to carry on the work of this contract and had requested its cancellation, and that the early completion of the contract is essential on account of its being the last gap in the Cherry Valley turnpike, and ordered " that this contract be and hereby is cancelled without prejudice to the heirs of Mr. Rockwood or the Surety Company, in accordance with section 132 of the Highway Law [as amd. by Laws of 1918, chap. 413],* and that the contract be readvertised in the next letting so that the work can be started and completed without any unnecessary delay." This order was issued without other formal notice to the executors or the surety company.

Immediately after the cancellation of the Rockwood contract, the Commissioner of Highways advertised for reletting and the bids were opened January 12, 1923. Herbert W. Bachelder was low bidder and the contract was awarded to him, subject to the approval of the Comptroller, at an amount which exceeded the

* Since amd. by Laws of 1924, chap. 412.— [REP.

contract price by $2,615. The contract was signed by Bachelder and acknowledged January 22, 1923, and forwarded with the bond executed by the Royal Indemnity Company, to the Commissioner of Highways. It was approved by him and sent February 2, 1923, to the Comptroller for approval by him, pursuant to the State Finance Law. It was never approved by the Comptroller and was returned to the Highway Department February 14, 1923, and the contract was never executed on behalf of the State.

In the meantime there had been a change in the personnel of the Commissioner of Highways, and the new Commissioner on March 2, 1923, made an order rescinding and declaring null and void the order of his predecessor of December 26, 1922. Notice of this was given to the Rockwood executors on that day with a direction to proceed with the work as soon as weather conditions would permit. Both the executors and the surety company notified the Commissioner in March, 1923, that their position was that the Rockwood contract was terminated by the cancellation order of December 26, 1922, and that he was without authority to rescind it. On April 25, 1923, the Commissioner notified the executors and the surety company to proceed with the work within ten days, in default of which the State would complete the work or readvertise and let the same and charge them with any excess cost. On May 12, 1923, the Commissioner entered an order canceling the contract under section 132 of the Highway Law and holding the contractor and the surety company liable for the excess cost of completion. Thereafter the contract was readvertised, and a contract under date of September 7, 1923, was entered into with James H. Corbett, Jr., to perform the work for a sum which was $15,540 in excess of the amount stipulated in the original contract and the work has since been completed pursuant thereto. Demand was made of the defendants for that sum, and upon their failure to pay, this action was brought to recover it.

At the trial two defenses were interposed. One was that the original contract was void for the reason that fee simple title of the rights of way required for the building of the road had not been acquired prior to advertising for proposals as required by section 148 of the Highway Law (as amd. by Laws of 1918, chap. 326),* and proof was given showing that to be the fact. Since the trial of this action, the Court of Appeals in *People* v. *Karr* (240 N. Y. 348) reversed the prior holding in that regard, and held that the acquiring of title to necessary rights of way was not mandatory as a condition precedent to the letting of a contract for highway

---

* Since amd. by Laws of 1924, chap. 460.— [REP.

construction, but that the only issue in an action of this kind arising out of such failure is whether or not because of such failure the contractor was so impeded in his work that he was reasonably entitled to abandon his contract and in fact did abandon it for that reason. There is no proof in this case to sustain any such defense, and it must, therefore, be overruled.

The other defense claimed is that the order of the Commissioner of December 26, 1922, canceling this contract, when acquiesced in by the defendants, put an end to the contract by mutual consent of the contracting parties and released both parties thereto from all the obligations thereof.

There can be no question but that, if this contract had been between two individuals their mutual agreement thereto would put an end to the contract. There is much force to the contention that the same rule should apply to contracts to which the State is a party. The Court of Appeals in *People* v. *Stephens* (71 N. Y. 527, 549) said: " The State, in all its contracts and dealings with individuals, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor. The State is not, in tutelage, as one incapable of acting *sui juris*, but has capacity to act in all matters by its representatives and agents, and is bound by the acts and admissions of its duly appointed and recognized officers and representatives, acting within the general scope of their constitutional powers, whether ministerial or executive. In the absence of fraud or collusion, the acts of public officers, within the limits of the authority conferred upon them, and in the performance of the duties assigned them in dealing with third persons, are the acts of the State, and cannot be repudiated. Neither can the State allege infancy, incompetency or disability to avoid the effects of the official acts of its agents. This is of necessity; for, as the State can only act by its duly constituted authorities, there would be no safety in dealing with the State, if it were otherwise, and each succeeding official could repudiate the acts, avoid the contracts, rescind settlements, and

reclaim payments made by his predecessor. The Legislature may and does regulate the power of its officers, and the power can only be exercised within the prescribed limits, but the Legislature does not negotiate contracts. Its powers are legislative, and every other power is delegated to other branches of the government." The language of this case has been cited with approval in *Danolds* v. *State of New York* (89 N. Y. 36) and *People ex rel. Graves* v. *Sohmer* (207 id. 450), and may fairly be said to accurately state the law as interpreted by that court.

The question to be determined, therefore, is whether the act of the Commissioner of Highways, in canceling and surrendering this contract, was within the general scope of the powers and authority conferred upon him as an executive officer by the Legislature.

By section 11 of the Highway Law (as amd. by Laws of 1913, chap. 80) the Commissioner of Highways is made the head of the Department of Highways and by section 15* is given general supervision of all highways and bridges which are constructed, improved or maintained in whole or in part by the aid of State moneys. Among other things, discretion is vested in him to determine the method of the construction, improvement or maintenance of such highways, to aid at all times in promoting highway improvement throughout the State, to approve and determine the final plans and specifications for the construction of highways and to make contracts for their construction and improvement. As said by the court: " The State Commissioner of Highways, under the existing law, has the general supervision of all highways and bridges which are constructed or maintained in whole or in part by the aid of State moneys. (Highway Law [Cons. Laws, chap. 25], section 15.) The supervisory powers of this official involve wide discretion as to the construction and maintenance of the highway system of the State." (*People ex rel. Carlisle* v. *Board of Supervisors,* 217 N. Y. 424.)

Further statutory authority for the construction of State highways is contained in the Highway Law (Art. 6) and broad discretionary powers are vested in the Commissioner of Highways as the representative of the State. By section 125 (as amd. by Laws of 1911, chap. 646) he is made the authority to decide what highways are to be improved, and by section 127 he is authorized to decide the manner and method of the construction and the type of highway to be built. By section 130 (as amd. by Laws of 1917, chap. 261, and Laws of 1919, chap. 623)† it is provided that such

---

* Since amd. by Laws of 1923, chap. 431.— [Rep.

† Since amd. by Laws of 1923, chap. 429.— [Rep.

highways shall be constructed or improved by contract to the lowest *responsible* bidder, and the decision as to the responsibility of the contractor is to be made by the Commissioner. He is also given power to reject all bids if in his opinion the best interests of the State will be promoted thereby. This section also indicates that the Legislature appreciated the fact that exigencies might arise after a contract was executed and during its performance, by reason of which the best interests of the State would require that the work be not performed according to the terms of the contract and that power should be vested in some State official to act in that emergency. That power was also given to the Commissioner. Subdivision 9 provides: " All contingencies arising during the prosecution of the work shall be provided for to the satisfaction of the commission and as may be agreed upon in the original or by a supplemental contract executed by the commission  *  *  *."

By section 132: " The performance of every contract for the construction or improvement of a state or county highway shall be under the supervision and control of the commissioner of highways, and it shall be his duty to see that every such contract is performed in accordance with the provisions of the contract and with the plans and specifications forming a part thereof."

Construing those provisions it has been held that the Commissioner is the sole representative of the State and the responsibility as to the State highways rests upon him. Accordingly it has been held, following the doctrine laid down in *Lord* v. *Thomas* (64 N. Y. 107) and *People ex rel. Ryan* v. *Aldridge* (83 Hun, 279), that if he has determined that the public good requires that a road under contract shall ·not be built, he is justified in stopping the work and breaching the contract on the part of the State. (*Matter of Standard .Bitulithic Co.* v. *Carlisle,* 161 App. Div. 191.) So, also, the power of the Commissioner to change the type of construction has been affirmed, and if necessary he may cancel the existing contract. (*Langan Construction Corp.* v. *State,* 110 Misc. 177; *Opinion of Attorney-General,* 20 State Dept. Rep. 233.) The power of the Commissioner to make changes in the work while under construction and to require other and additional work to be done, either with or without a supplemental contract as the circumstances may require, has also been recognized. (*Buckles* v. *State,* 175 App. Div. 677; *Kent Construction Co.* v. *State,* 212 id. 197; *Stanton* v. *State,* 103 Misc. 221; affd.,⠀187 App. Div. 963.) It has never been questioned that it is within the authority of the Commissioner to consent to any assignment of a contract, which in effect is the substitution of an entirely different person as one of the contracting parties, or to modify the terms of the contract by extending the

time of performance, both of which were done in this case, and upon the validity of those acts of the Commissioner the State must rely for its recovery here.

If it can be said that it is within the powers granted to the Commissioner, if in his judgment the public interests require it, to terminate a contract by a breach thereof, thereby subjecting the State to liability for damages, how can it be maintained that when the Commissioner has reached the same determination that the best interests of the State will not be promoted by the performance of a particular contract, he cannot terminate that contract with the consent of the other contracting party, and thereby save the State from a claim for damages for its breach? Is the question of power to be determined by the reasons which influenced the mind of the Commissioner in reaching his determination? Is it any different in principle, if the reason in one case is that the road should be constructed of different material, and in the other that the work should be done by a different contractor, who has the ability and the equipment to construct the last link in one of the main east and west highways across the State without loss of time? The very questions suggest the answers.

I am of the opinion that it was the intention of the Legislature to invest the Commissioner of Highways with full discretionary powers in the matter of the construction of State highways, and that, in the exercise of good faith, the power to make contracts carried with it the power to terminate contracts. There is no suggestion in this case that the Commissioner of Highways in canceling this contract did not act with the utmost good faith, and with the honest belief that the course he took was for the best interest of the State. Fraud or bad faith may furnish grounds for nullifying the acts of a public officer even within the limits of his conceded powers, but the facts of this case do not require the discussion of the rules applicable thereto. The cancellation of this contract was within the powers of the Commissioner, and when acquiesced in by the other party to the contract, the contract was at an end, and no liability of either party can be predicated thereupon.

The fact that the Commissioner in his order mistakenly referred to section 132 of the Highway Law as the authority for his action, does not affect the question. The power to "cancel," as it is termed, given by that section has no application to this case. That refers only to the action to be taken by the Commissioner in case of breach by the contractor in the performance of the contract on his part. It is based upon an affirmation of the contract, and furnishes the method by which the contract can be completed

and the damages sustained by the breach determined. It has no application to a case where the termination of the contract is occasioned by other causes than the default of the contractor. (*Matter of Standard Bitulithic Co.* v. *Carlisle,* 161 App. Div. 191.)

Judgment is directed for the defendants dismissing the complaint.