MAUDE E. ALLEN, Respondent, v. THE VILLAGE OF HOLLEY and Another, Appellants.

BURT C. ALLEN, Respondent, v. THE VILLAGE OF HOLLEY and Another, Appellants.

Fourth Department, May 8, 1929.

T. *Carl Nixon*, for the appellant The Village of Holley.

*S. H. Millener* and *George P. Keating*, for the appellant William C. Pickard.

*Fred C. Hovey* [*P. Chamberlain* of counsel], for the respondents.

TAYLOR, J. November 10, 1924, defendant Pickard made a contract with the State for improving a " county highway " in the village of Holley, Orleans county. The village was not a party to the contract. Pursuant to section 137 of the Highway Law the village requested that Main street in that village be widened and improved, and by resolution agreed upon the type, width, length and character of the street and curbing, and appropriated $55,000 for the improvement. Main street runs north and south, and Geddes street — running east and west — intersects it. The work included paving the street with concrete, excavating for and laying drainage pipes, changing elevations of " catch-basins " and manholes, and placing of curbing.

On August 7, 1925, all the work had been done on Main street and around the corner of Geddes street, except laying the curb. In April a trench twenty inches wide and about four feet deep had been dug for the purpose of putting in an iron pipe between two " catch-basins," one on the west side of Main street about six feet north of the northerly sidewalk on Geddes street, and the other around the corner southerly on the north side of Geddes street, about six feet west of the westerly Main street sidewalk. This trench had been filled up in April, but, as later appears, the filling may have sunk considerably when August came. Another trench twelve inches wide and about fifteen inches deep was dug for the insertion of the curb around this corner. There is some question, however, whether this had been dug at the time of the accident in August. In addition to the work Pickard did for the

State, he made a special contract with the village to deepen the trench on the west side of Main street to a depth of some thirty-six inches, for better drainage; but the testimony is overwhelmingly to the effect that this deepening commenced north of the northerly Geddes street sidewalk about at the " catch-basin " on the west side of Main street, and ran thence northerly to Albion street.

In June, 1925, the village board of trustees passed this resolution: " Moved by C. C. Clough and seconded by W. J. Hawkins that the Street Commissioner be hereby authorized by the Board to close intersections on Main street when so requested by the contractor W. C. Pickard. Motion carried."

This resolution provided merely for closing off the ends of streets running into Main street. Even if this was a closing of the highway under section 77 of the Highway Law (as amd. by Laws of 1924, chap. 460), the sidewalk crossings of Main street were actually not closed, but were kept open for pedestrian travel.

Plaintiff Maude E. Allen, with a Miss Webster, was walking west on Geddes street, about nine-thirty P. M., August 7, 1925. Upon reaching Main street, she crossed it diagonally to the northwest. There were no lights or barricades around the junction of the north sidewalk on Geddes street and the west side of Main street at the curb line. In his contract defendant Pickard had agreed to erect suitable barricades and place red lights around and in front of his work whenever and wherever it was necessary to protect the traveling public and to indicate to them by day and night any conditions likely to cause injury. Mrs. Allen fell into some ditch, according to the great preponderance of the evidence, including her own testimony, at a point about in the center (important) of the northerly Geddes street crosswalk where it intersected the Main street curb line on the west. She testified that she did not know there was an open trench there or an excavation, and that it was very dark. In the actions brought against the village and the contractor, plaintiff Maude E. Allen recovered a verdict of $10,000 and her husband a verdict of $4,000. Defendants have appealed from the judgment and from orders denying motions for new trials. In each case motions were made for nonsuit and a dismissal and for a direction of a verdict. The size of the verdicts is not questioned.

Section 137 of the Highway Law (as amd. by Laws of 1916, chap. 571) provides for constructing or reconstructing a county highway through a village. The section provides for the raising of the expense by the village, depositing the funds raised with the State Comptroller, etc. The section also states that after the work is completed and accepted in behalf of the village and the State, it

shall be maintained in the same way as is provided for the maintenance and repair of State and county highways. This general maintenance rule, existent at the time of the accident, is found in sections 170 and 172 of the Highway Law (as amd. by Laws of 1922, chap. 371, §§ 13, 15). The maintenance is there placed under the supervision and control of the State Commissioner of Highways. These sections apply to villages as well as towns, section 172 providing that each incorporated village shall annually pay one and one-half cents for maintenance and repair of each square yard of pavement of such an improved highway. This is of incidental — if any — importance.

Farrell v. Town of North Salem (205 N. Y. 453) dealt with a contract between the State and a contractor, as here. The action was against the contractor and the town in which the highway was being improved. It was held that during the progress of the work the duties and liabilities of the defendant town, in the particular road and its approaches, were suspended; furthermore, that the town and its highway commissioner did not resume their jurisdiction or liability as to the road and approaches being built or graded until after the acceptance of them by the State. In the instant case the contract was made in November, 1924, the work commenced in April, 1925, the accident occurred August 7, 1925, and the work was not completed nor accepted by the State, pursuant to section 134 of the Highway Law (as amd. by Laws of 1916, chap. 460), until November 10, 1925. A distinction of the Farrell case is sought to be made here because a village is involved instead of a town. But when sections 137, 170 and 172 of the Highway Law are considered, there seems to be nothing in the attempted distinction made. The Farrell case appears to be a direct authority to the effect that the duties and liabilities of this village were suspended during the progress of the work, not only as to the highway proper under construction, but as to all incidental terrain necessarily involved. The Farrell case is mentioned with approval in People ex rel. Carlisle v. Board of Supervisors (217 N. Y. 424, 428).

The village cannot be held under the doctrine of respondeat superior (Storrs v. City of Utica, 17 N. Y. 104, and many succeeding similar cases), for Pickard's contract was not with the village but with the State. Nor can the village be held for a breach of non-delegable duty to the public (Deming v. Terminal R. of Buffalo, 169 N. Y. 1), since that duty was suspended until November 10, 1925 (Farrell v. Town of North Salem, supra).

Defendant Pickard makes the claim that Mrs. Allen fell north of the Geddes street north sidewalk, and, therefore, that the accident happened at a place under the control of the village and not

that of the contractor. And plaintiffs contend that Mrs. Allen fell into a ditch which had been dug by the contractor, defendant, under a special contract with the defendant village. As to the first of these claims, it seems beyond doubt that Mrs. Allen fell into some ditch at the center of the junction of the Geddes street north walk with the place where the curbing was to be put back in by the contractor — whether it was the ditch dug twenty inches wide by forty-eight inches deep for putting in pipe between the " catch-basins " and filled up again in April (the filling, perhaps, having sunk) — or whether it was the curb trench twelve inches wide by fifteen inches deep. As to claim No. 2, the testimony of the witnesses Pickard and Hull points convincingly to the conclusion that, in spite of any controverting testimony, which is incidental and unpersuasive, the ditch dug by defendant Pickard specially for the village ended at its southerly end several feet north of the place where Mrs. Allen fell. So as to claim No. 1, the place where Mrs. Allen fell was within the terrain under the exclusive control of the contractor, and as to No. 2, the spot was not covered by the special contract between the defendants.

Plaintiff Maude E. Allen was familiar with the locality and the conditions in general. But we find contributory negligence to have been a question of fact, particularly since there were no barricades nor lights protecting or indicating the presence of the hole, and it was dark when the accident happened.

The judgment should stand against defendant Pickard, the contractor, because he left a dangerous place unguarded and unilluminated. As to the village, if the jury finding against it was based upon a conclusion that Mrs. Allen fell into a place covered by the special contract between the village and Pickard, such finding is against the weight of the evidence. If the verdict is based upon anything else, it is contrary to the evidence and contrary to the applicable law as laid down in the *Farrell* case.

As to defendant Pickard, the judgment and order should be affirmed, with costs.

As to the defendant village, the judgment and order should be reversed upon the law and facts and a new trial granted, with costs to that appellant to abide the event.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

In each case: Judgment and order as to the defendant Pickard affirmed, with costs. Judgment and order as to the defendant village of Holley reversed on the law and facts and a new trial granted, with costs to that appellant to abide the event.