*869 OPINION OF THE COURT
Gerard M. Weisberg, J.
In the early hours of February 29, 1984, Frederick Hutley, driving a tractor trailer full of Perdue chickens, ran into a 3-foot by 2-foot by 8-inch deep pothole in the center lane of the New England Thru way in The Bronx, New York. As a result, he lost control of the vehicle which ran across the right lane and shoulder, crashed through the corner of the parapet protecting the overpass above the Hutchinson River Parkway, went down the embankment and came to rest on the roadway some 25 to 30 feet below.
Defendant, New York State Thruway Authority (Authority), knew of this and other potholes in the area and expert testimony has indicated that rough road and reduced speed limit signs should have been posted. The issue before us is whether in light of the statutory division of responsibilities between the Authority and the City of New York (City) with respect to the maintenance and regulation of traffic on this section of the New England Thru way, defendant can be charged with this omission.
Pursuant to the New York State Thruway Authority Act (added by L 1950, ch 143), defendant, a public corporation, was created and vested with the "power to construct, reconstruct, improve, maintain or operate a thruway system”. (Public Authorities Law § 353.) The Authority acquired the land and constructed and maintains the roadway that constitutes the New England section of the New York State Thruway in accordance with this statute.
The regulation of public thoroughfares and traffic thereon, however, is a governmental function which is the exclusive province of the sovereign. (People v Grant, 306 NY 258.) As a creature of the Legislature, the Authority has only such regulatory power as has been delegated to it. (Supra; Hofstra Coll, v Board of Trustees, 145 NYS2d 323, affd without opn 3 AD2d 712.) The statutory authority for the regulation of traffic is codified in the Vehicle and Traffic Law. Sections 1630 and 1631 thereof grant defendant full authority with respect to traffic on the Thruway. Significantly, however, section 1632 provides: "This article shall not apply with respect to any portion of the New York state thruway located within a city having a population in excess of one million.”
Conversely, article 39 of the Vehicle and Traffic Law grants cities in general, and New York City in particular, traffic *870 control authority over the roads and thoroughfares within their boundaries. With respect to New York City, this jurisdiction extends to sections of the Thruway located within the City’s limits. (Vehicle and Traffic Law § 1645.) Thus, it was the City and not the Authority which had the sole statutory ability to control traffic at the site of the incident.
Claimants contend that as the owner of the Thruway, the Authority had a nondelegable duty to maintain the roadway in a reasonably safe condition, which included the responsibil-. ity to warn of known dangers such as by posting reduced speed limit and rough road signs where appropriate. The Vehicle and Traffic Law, they argue, while allowing the City to regulate traffic, does not abrogate defendant’s responsibility in this area, but only adds another possible regulator.
We disagree. Claimants’ interpretation of the statutes in question disregards their plain meaning and would create an unworkable regulatory morass.
One can hardly imagine a clearer statement of the Legislature’s intent than sections 1632 and 1645 of the Vehicle and Traffic Law. Their language leaves no room for interpretation but sets forth in an unambiguous fashion which entity has jurisdiction over traffic on the Thruway within the boundaries of New York City. To suggest a joint authority was envisioned not only disregards the words of the statutes but is unworkable. If defendant and New York City decided to post different speed limits, which one would have to be obeyed? (Cf., Ball v County of Monroe, 79 AD2d 878, lv denied 52 NY2d 706 [where State had jurisdiction over intersection, county had to remove its signs].)
With respect to the argument that ownership creates a nondelegable duty to warn of dangers, this case points up the pitfall of quoting phrases from cases without remembering the circumstances which engendered their creation. While the Court of Appeals has repeatedly held that a governmental unit has a nondelegable duty to maintain its roads, one must remember that the concept being reiterated was that a municipality or department of the State could not unilaterally abrogate such responsibility by subcontracting the maintenance work. That is not to say, however, that the Legislature cannot specify which governmental unit will be responsible for a particular roadway while freeing others from any obligation with respect thereto.
Thus, in Rotey v Van Ooyen (73 AD2d 804), plaintiff was *871 injured at the intersection of two town highways. Section 102 of the Highway Law obligated the county to maintain these roads. That notwithstanding, plaintiffs action against the county for improper signing was dismissed because Vehicle and Traffic Law §§ 1651 and 1660 granted that authority only to the town.
Similarly in Miller v Tuchols (90 AD2d 957), plaintiffs action against a town for failure to replace a stop sign at the intersection of a town road and a State highway was dismissed. Only the State had jurisdiction over traffic control at the crossroad. That the municipality was aware of the missing stop sign did not change the result. Any duty it may have had to the public was satisfied by notifying the State, the only entity which had regulatory authority over the location.[1] (See also, Ossmer v Bates, 97 AD2d 871.)
Moreover, where the State undertakes reconstruction of a roadway under Highway Law § 104-a, whatever duties and responsibilities a municipality may otherwise have by virtue of its ownership are suspended during the progress of the work. (Willis v City of New York, 107 AD2d 747; see, People ex rel. Carlisle v Board of Supervisors, 217 NY 424; Farrell v Town of N Salem, 205 NY 453; Allen v Village of Holley, 226 App Div 294; see also, Ball v County of Monroe, 79 AD2d 878, lv denied 52 NY2d 706, supra; Gunn v Good Luck Truck Rental, 85 AD2d 567; but cf., Lattanzi v State of New York, 74 AD2d 378, affd on opn below 53 NY2d 1045 [where Authority used State employees to do maintenance work, they became joint tort-feasors].)
Thus, while- we have found no precedent directly on point, prior cases confirm the proposition that traffic control authority, and concomitant liability therefor, may rest with a governmental entity other than the one which owns and maintains the roadway. That such a division of responsibility may be less than perfect cannot be denied. However, "if it results in conditions which may create inconvenience or peril to wayfarers upon such highways the remedy must be sought in legislation, for the courts must give effect to the statutes as they stand.” (Farrell v Town of N Salem, 205 NY 453, 457, supra.)
*872 In summary, defendant may not be held liable for a failure to post reduced speed limit and rough road signs because the sole authority for such regulation was vested in the City of New York which was already on notice of the problem.[2]

. Here, New York City police patrolled the section of the Thruway in question and a City police officer testified that they were aware of the road condition at the site of the mishap. (See, Costello v Barr, 83 AD2d 952.) Thus, any lack of notification was not the proximate cause of the incident. (Ball v State of New York, 96 AD2d 1139, affd on opn below 61 NY2d 990.)

. Were the Authority’s reason for not posting signs predicated on the foregoing analysis, it would be insulated from liability even if incorrect. (Alexander v Eldred, 63 NY2d 460.) Here, however, no evidence was offered why no warning signs were posted. This alternative defense is therefore unavailable. (Cf., Traver v State of New York, Ct Cl, Sept. 5, 1986, Lengyel, J. [appeal pending].)