JOHN R. ROCKART, Plaintiff, *v.* CITY OF MOUNT VERNON, Defendant.

Supreme Court, Westchester County, May 25, 1931.

*Strang & Taylor* [*Clinton T. Taylor* of counsel], for the plaintiff.

*J. Henry Esser, Corporation Counsel* [*J. Henry Esser* and *Arthur H. Ellis* of counsel], for the defendant.

CLOSE, J.   This is an action against the city of Mount Vernon for an alleged breach of contract of employment.

The contract is under seal dated the 19th day of December, 1912, and provides that the plaintiff will act as professional adviser or consulting architect for the defendant in the matter of the proposed new city hall building and police headquarters building. The plaintiff agreed to obtain the necessary data as to the requirements of the various departments of the city to be housed in the building; to prepare a program of competition upon which architects would be invited to compete; to act as adviser on the conduct of such competition, and upon the selection of an architect to act in an advisory capacity during the preparation of the plans and in the construction of the buildings.   He was to receive as compensation " a sum equal to two per cent upon the

total cost of the two buildings, to wit, the city hall building and the police headquarters building, such payments to be made in installments at the times and in accordance with the payments made to the various contractors for said two buildings."

It is conceded that the two buildings in contemplation were a police station building and a city hall building. A competition was held and an architect, Mr. Bartlett, was selected to prepare plans and specifications. This was done and it is admitted that the plaintiff was consulted and advised with in the proposed plans and specifications for both buildings.

The police station was erected and the plaintiff was paid in full for his services in connection with that building. The city hall was not then built, though land was purchased for both buildings. The competition submitted to the various architects contained a statement to the effect that funds for the construction of a police headquarters were available and provided further that the "actual construction of the city hall building may be postponed for a reasonable time."

The contract between the city and Mr. Bartlett, the architect, pursuant to the competition, contained a provision to the effect that the city had the right at any time to abandon the plans after accepting the working drawings upon payment to the architect of the proportionate cost of the plans up to the time of the abandonment. The police headquarters building was apparently constructed soon after the competition was held.

In 1914 Bartlett was directed by resolution of the common council to prepare plans and specifications for the city hall building. These plans are in evidence and bear date of May 3, 1915. The common council apparently never passed any resolution approving the plans and accepting them. It seems that some doubt arose as to the advisability of erecting a city hall and an unofficial referendum was held pursuant to a resolution of the common council under which the people were invited to express their approval or disapproval of a proposed city hall as shown in the plans at a cost not to exceed $200,000. When the contract in question was entered into, the city was authorized to issue bonds up to that amount for the purpose of erecting a city hall (Laws of 1910, chap. 75). During the campaign which preceded the vote upon the unofficial referendum the plaintiff took an active part and appeared at a public meeting to speak in favor of the proposition. The result of the referendum was against the erection of a city hall. The architect, Mr. Bartlett, apparently assumed that the project had been abandoned and rendered a bill to the city and was paid for his services to date. The plaintiff approved this payment to

Mr. Bartlett, which probably was made pursuant to the agreement previously referred to authorizing the city to abandon the project if it so desired. No affirmative action looking to the erection of a city hall was taken by the city of Mount Vernon until 1924. In the meantime a new charter had been granted to the city by the Legislature (Laws of 1922, chap. 490), which changed in many material respects the structure of the city government and removed the power of employment from the hands of the city council and placed it in the hands of the board of estimate and contract composed of the mayor, the comptroller and the president of the common council.

On December 9, 1924, a resolution was adopted by the common council reciting that the city of Mount Vernon should own its own city hall and that the board of estimate and contract was considering the employment of George M. Bartlett as architect. Such employment was approved. As a result of this new employment, Bartlett prepared a new plan for a city hall that was similar in its front elevation to the original plan but differed materially in its interior arrangement, and was greatly increased in size. This building was erected at a cost of approximately $637,000.

The resolution that was adopted employing Bartlett to prepare plans for the 1924 project contained a resolution terminating the employment of all other architects. When the matter became active in 1924, the plaintiff tendered his services to the city. At different periods thereafter he tendered his services to the city so that, if he had a valid contract in 1924, he protected his rights by thus tendering his services.

The contract between the plaintiff and the city being under seal, the twenty-year statute applies (Civ. Prac. Act, § 47). (*Brooklyn Public Library* v. *City of New York*, 222 App. Div. 422.) There is no different rule to be applied when a municipal corporation is involved than in any other case. (*Baird* v. *City of New York*, 96 N. Y. 566, 592.)

Indeed, the defendant admits that if the city hall in contemplation of the parties at the time the contract was made had been erected, the plaintiff would have been entitled to be paid the percentage provided for in his contract. It is the contention of the plaintiff that he fully performed the contract on his part, or was prevented from performance by the defendant, and is, therefore, entitled to recover.

The defendant resists upon several grounds. Among others, that the contract cannot be construed to mean a continuing employment of the plaintiff but that it was intended only to apply to the building then in contemplation of the parties. The defendant claims that

the contract was abandoned; that the plaintiff had been paid in full; that the resolution by the common council terminating his employment was authorized, and finally, that the contract is null and void because after the making of the contract the plaintiff was appointed to and qualified as a member of the city planning commission.

I am of the opinion that the contract in question referred to the building then in contemplation. The plaintiff's employment was in regard to " *the proposed city hall.*" This language, it seems to me, is plain and unambiguous and refers to a definite project that was then within the contemplation of the parties, namely, to erect a city hall at a cost of about $200,000. The plaintiff now asks to have this contract construed to refer to a city hall erected many years later, to meet the needs of a city that had grown and developed rapidly, at a cost more than three times the original estimate. I cannot place the construction upon this contract that the plaintiff asks.

" In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed. * * *

" This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties and the objects which they had in view, and when the intent is thus ascertained, it is to be effectuated unless forbidden by law." (*Gillet* v. *Bank of America*, 160 N. Y. 549, 555.)

The contract cannot be construed in the light of subsequent events. (*Dunn* v. *Morgenthau*, 73 App. Div. 147, 149.)

Having reached the conclusion that the plaintiff's contract referred to the building then in contemplation of the parties and not to the building erected in 1927, I am forced to the conclusion that the contract was abandoned by mutual consent. Mutual assent to the abandonment of a contract, like mutual consent to the making, may be inferred. In *Parks* v. *Gates* (84 App. Div. 534) the court states the rule as follows: " If the scheme was abandoned and had proven abortive by reason of existing conditions, the parties were remitted to their former condition, and no obligation would then exist by one towards the other respecting their subsequent action. * * *

" Such obligation ceased the moment the contract was abandoned by the parties thereto, and thenceforth they stood toward each other as strangers."

The rule is thus stated in *Rodgers* v. *Rodgers* (235 N. Y. 408, 410):

" No reason can be suggested why the parties to a contract, before there is any breach and so long as neither party has completely performed or been discharged from his obligation, may not mutually agree to cancel and rescind the contract."

Evidence of many affirmative acts indicating abandonment on the part of the city after the referendum in 1912 was offered. The site was converted into a park. The city, in 1920, entered into a lease continuing its offices in the building where they were then located. The mayor stated publicly, subsequent to the referendum, that the project was dead. Mr. Bartlett placed his plans in his storerooms, rendered a bill to the city for his services, which was paid.

On the part of the plaintiff, the inference is irresistible that he consented to the abandonment of the contract. The plaintiff spoke at a public meeting and urged the erection of the building. About the time that Bartlett was paid for his services, the plaintiff received payment of $1,125, which he concedes was on account of his services in reference to the proposed city hall. Nothing was due to him under his contract. His explanation of how this money came to be received is very vague. The city records fail to throw any light upon the purpose of the payment but, to my mind, is strong corroboration to the claim of the defendant that the project was, as stated by the mayor, " dead."

The plaintiff took his chance that the scheme would come true. The scheme failed to receive approval of the people of the city, and it seems very probable that the payment he received was received because the project was deemed abandoned and that the city desired to compensate him for the services he had rendered up to the abandonment of the project. This fact, taken in connection with the fact that he approved the payment to Mr. Bartlett, and did nothing further in connection with his alleged contract until 1924, or nine years after the unofficial referendum, is further evidence supporting the theory of the defendant that the contract was abandoned.

The plaintiff in his testimony said that he assumed that the city hall would be built within a reasonable time, and that ten years would not be a reasonable time, whereas, the evidence disclosed that it was not until twelve years after the contract was entered into that he made any claim thereunder, and until nine years after the project was treated as " dead " by the city authorities was any such claim made by the plaintiff.

The matter was placed so completely upon the plaintiff's mental shelf that he had no immediate recollection whatever of having received any payment on account of his contract. Shortly after

the unfavorable vote he accepted appointment to the city planning board and retained his connection until about the time the project to be built, the city hall, was revived when he resigned.

Inasmuch as I have reached the conclusion that the contract between the parties referred to the city hall in contemplation of the parties when the contract was made in 1912, and that the project to erect that particular building was abandoned by mutual consent, it is not necessary to pass upon the other defenses urged.

I accordingly find for the defendant.