### REAM v. CALLAHAN.
### No. 1697.

District Court, E. D. New York.
Jan. 13, 1942.

952

Kadel, Sheils & Weiss, of New York City (John P. Walsh, of New York City, of counsel), for plaintiff.

McDermott & Turner, of New York City (Charles J. McDermott and Thomas R. Hart, Jr., both of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This case comes before this court on two motions.

1. Motion made on behalf of the plaintiff to strike out the first defense set forth in the answer on the ground that it is insufficient. The defense in question alleges:
"1. That the complaint fails to state a claim against the defendant upon which relief can be granted."

2. A counter-motion made on behalf of the defendant for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, dismissing the action because the complaint fails to state a claim upon which relief can be granted.

As the sole question presented by both motions is, does the complaint state facts sufficient to constitute a cause of action, I will consider them together.

The material allegations of the complaint are as follows:

The plaintiff resides in Florida, the defendant in Brooklyn, New York.

On February 1st, 1919, and for many years prior thereto, plaintiff was a doctor of dental surgery, specializing in oral surgery and radiography, in Brooklyn. He had acquired great ability, enjoyed a wide reputation, and had a large practice.

On that date he entered into a contract with the defendant, who was a duly licensed dentist, excerpts from which are quoted in the complaint.

The complete instrument reads as follows:

"Agreement made and entered into this day of February, 1919 by and between Frederick K. Ream, hereinafter called the party of the first part, and Vincent D. Callahan, hereinafter called the party of the second part.

"I The party of the second part, in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and of the contracts hereinafter contained for his services and the compensation to be paid therefor by the party of the first part, said compensation being more than it otherwise would be on account of clauses 3, 4 and 5a of this agreement, does hereby agree with and promise to work for said party of the first part, as a specialist in Oral Surgery and Radiography, in the Borough of Brooklyn, City of New York, State of New York for five years from and after February 1st, 1919.

"Ia It is also understood and agreed that the party of the second part shall be willing to work in party of the first part's other offices in the event of absence occasioned by illness or vacations of my assistants.

"II The party of the second part further covenants and agrees with party of the first part that he will, to the best of his ability and skill do everything in his power to promote the interests of the party of the first part during all the time he may be in his employ; that he will conform to the regular rules and hours of the office of the party of the first part (said hours to be from 9:00 A.M. to 5 P.M. on week days only), and will exercise care, kindness and courtesy in the treatment of patients.

"III The party of the second part further covenants and agrees with party of the first part that said party of the second part will not either directly or indirectly carry on, or be employed or concerned in the practice of Oral Surgery or Radiography in the Borough of Brooklyn, City of New York, State of New York, for the space of three years from the day said party of the second part ceases to be employed by said party of the first part; said three years to date from the last day said party of the second part actually works for said party of the first part, whether the term of service be more or less than that set forth in this agreement.

"IV The party of the second part further agrees that whenever he leaves the service of the party of the first part he will not send notices to any patients whom he has met in the office of the party of the first part, or in any way whatsoever attempt to divert business from said party of the first part.

"V The party of the first part in consideration of the services to be performed by the party of the second part as aforesaid, and of the covenants and agreements therein contained on the part of the party of the second part, agrees to pay the said party of the second part the sum of $1,040 for the first half year, or $40 per week, and $1,300 for the second half or $50 per week, of the term of service mentioned in clause I of this agreement—$3,100 for the second year or at the rate of $59.61 per week; $3,600 for the third year or at the rate of $69.23; $4,100 for the fourth year or at the rate of $78.84 per week; $4,-600 for the fifth year or at the rate of $88.46 per week.

"Va It is hereby agreed that at the expiration of five years the party of the second part will accept a one-third interest of the net income in party of the first part's practice in Brooklyn instead of a stipulated salary, said compensation or one-third interest to be at least $5,000 per year. eight $\frac{V.D.C.}{F.K.R.}$ At expiration of ten years: one half interest in dental practice and dental equipment.

"Vi It is mutually agreed that for any wilful breach of this agreement, or neglect to perform his duties hereunder by the party of the second part, or for any gross immoral or intemperate conduct on the part of the party of the second part, the party of the first part shall have the right to discharge the party of the second part and thereupon said party of the second part shall not be entitled to any further compensation hereunder.

"Fredk. K. Ream
"Vincent D. Callahan
"Witness
"Pearle E. Ream"

On January 1, 1922 the parties entered into the following further agreement:

"January 1st, 1922.
"Regarding a certain contract by and between Frederick K. Ream, party of the first part, and Vincent D. Callahan, party of the second part, entered into on the first day of February, 1919, and referring to compensation, it is hereby mutually agreed that same shall be changed to remain binding as follows:—

"That the said party of the 2nd part is to receive from October 1st, 1921, one third of the net receipts of said practice at 60 Hanson Place, Brooklyn, New York, for a period of three years, and, if the said party of the 2nd part faithfully carries out the conditions as mentioned in the contract

954

above dated February 1919, he shall then become a fifty percent (50%) owner in said practice and dental equipment, including office furnishings, ex-ray equipment, surgical instruments, etc. It is mutually agreed that the party of the 1st part after the expiration of three years from October 1st, 1921, shall supply and pay an assistant for the Brooklyn office without expense to the party of the 2nd part.

"It is mutually agreed that all the remaining terms and conditions of the former contract as above dated, remain in full force and effect with the exception of the change mentioned in this supplimentary agreement regarding income.

"Fred'k. K. Ream
"Vincent D. Callahan

"Pearle E. Ream
"Witness"

Pursuant to the contract of February 1, 1919, the defendant was employed by the plaintiff in the practice of oral surgery and radiography, at No. 100 Fort Greene Place, and soon thereafter at No. 60 Hanson Place, Brooklyn. Plaintiff instructed defendant in his art, introduced him to his patients, and entrusted him with the conduct of the practice in his absence. Plaintiff duly performed all the conditions of the contract to be performed by him.

For a period of three years from October 1st, 1921, the defendant received one-third of the net receipts of said practice, and thereupon and thereafter the defendant became a fifty (50%) percent owner in and received a fifty (50%) percent interest in said practice and dental equipment, including office furnishings, X-ray equipment, surgical instruments, etc., and received fifty (50%) percent of the profits of said practice until September 30th, 1937.

On October 1st, 1937, the defendant terminated his association with the plaintiff. He then commenced to practice oral surgery and radiography at No. 80 Hanson Place, Brooklyn, which is in the next block to No. 60 Hanson Place. Upon information and belief plaintiff alleges that defendant sent, or caused to be sent, notices to patients whom he had met in plaintiff's office, and attempted to, and did, divert business from the plaintiff.

By reason of the foregoing almost the entire practice carried on at 60 Hanson Place, and the good will thereof has been diverted by defendant to himself at 80 Hanson Place, where he now carries on said practice, and plaintiff has lost his said practice and the profits therefrom.

Judgment is demanded in the sum of $200,000 with interest thereon from October 1st, 1937.

The breach of contract charged is violation of the covenant against competition, which is alleged to have commenced on October 1st, 1937.

To recover, plaintiff must show that the covenants were in force and legally binding upon the defendant on that date.

■ The complaint on its face clearly shows that the covenants became operative, if at all, on October 1st, 1924, and expired three years thereafter by express limitation, and if that be not so then that they did not become operative but were abandoned or abrogated upon the change in the relationship of the parties on October 1st, 1924.

Whether the contracts were drawn by laymen or lawyers, they clearly express the intent of the parties that the defendant was not to compete with the plaintiff, as therein described, for three years after defendant should cease to be employed by plaintiff. There is no ambiguity in either contract, and they should be given effect according to their terms.

Paragraph III of the original contract expressly provides that the three years during which the defendant shall not carry on the practice of oral surgery or radiography in the Borough of Brooklyn are as follows: "from the day said party of the second part ceases to be employed by the party of the first part"; "date from the last day said party of the second part actually works for said party of the first part whether the term of service be more or less than that set forth in the agreement."

Paragraph IV expressly provides that the defendant shall not send notices to any patients whom he has met in plaintiff's office "whenever he leaves the service" of the plaintiff, and that he shall not attempt to divert business from plaintiff whenever he leaves his "service".

All of the provisions of the original contract show that defendant, the party of the second part, agreed to serve the plaintiff for five years as an employee at salaries fixed by the agreement, and that plaintiff, the party of the first part might discharge the defendant, the party of the second part, for any of the causes stated in paragraph VI of said original agreement.

At the expiration of eight years the relationship of employer and employee was to cease and the parties were to become equal partners.

Surely when they would become equal partners the defendant would no longer be an employee.

Plaintiff makes a point that after five years service the defendant was to receive one-third interest of the income of the party of the first part's practice in Brooklyn, instead of a stipulated salary, said compensation or one-third interest to be at least $5,000 per year, but that clearly did not change the relation of the parties as employer and employee.

The later agreement of January 1st, 1922, changes the time when the defendant was to receive the increase by way of salary of one-third of the net income to October 1st, 1921, and the time when he was to become a full partner to October 1st, 1924, and from that time the party of the first part was to supply and pay an assistant to the Brooklyn office without expense to the defendant. The agreement also provided for a continuance of all the other terms of the original agreement.

■ That agreement necessarily provided for the remaining in full force and effect of the terms of the original agreement, as the defendant by its terms was to remain an employee of plaintiff for three years from October 1st, 1921, as the payment to him of one-third of the net income did not make him a partner, but was only a method adopted of determining what was to be paid as his salary instead of providing for the payment of one fixed in dollars and cents.

That the word "partners" was not used in the agreements is immaterial. Evans v. Warner, 20 App.Div. 230, 235, 47 N.Y.S. 16.

The whole of the agreements show that plaintiff and defendant contemplated the carrying on of the business or profession as co-owners for a profit and that was a partnership. Martin v. Peyton, 246 N.Y. 213, 158 N.E. 77.

■ Where two people who have been master and servant become co-partners the relationship of master and servant, or employer and employee, ceases. Beasley v. Berry, 33 Mont. 477, 84 P. 791; People, on Information of Shaffer, v. Curiale, 171 Misc. 264, 265, 12 N.Y.S.2d 464.

The survival of the covenants, on which this action is based, being inconsistent with the new status of the parties they must be deemed to have been abandoned by mutual consent on October 1st, 1924. National Cash Register Co. v. Remington A. Co., Inc., 242 N.Y. 99, 105, 151 N.E. 144; City of New York v. Brooklyn Union El. R. R. Co., 182 App.Div. 507, 169 N.Y.S. 891.

The mutual consent to the abandonment of the covenants in question may be inferred. Rockart v. City of Mount Vernon, 140 Misc. 270, 251 N.Y.S. 514.

In any event the defendant was not an employee of the plaintiff after October 1st, 1924, and the covenants would in any event have ceased to have binding force and effect after October 1st, 1927.

The plaintiff and defendant carried on the business, or profession, as co-partners for thirteen years after defendant ceased to be an employee and for ten years after the last day to which the covenants could in any event have been binding. The co-partnership was one at will and could be terminated by either party at any time.

This action was not commenced until November 22nd, 1940, more than three years after plaintiff contends it accrued, and no injunctive relief was sought by plaintiff during that time.

■ Plaintiff discusses at some length the rules as to pleadings, but that requires no consideration here, except that it is very clear that this motion is to be heard on the pleading, the complaint, and not upon alleged facts not appearing in the complaint.

■ Of course, reasonable inferences may be drawn, and plaintiff is entitled to the most favorable inferences to be drawn from the facts pleaded, but there being no ambiguity in the agreements, each should be construed according to its terms.

■ Plaintiff pleaded the agreement and relies upon it, and the court cannot make a new agreement for the parties. It is the agreement as a whole and not specific excerpts that controls. I have hereinbefore said, and I repeat, that plaintiff cannot change the construction of the restrictive clauses of the original agreement by the second agreement, except to reduce the time they were to operate, because the agreement to measure the compensation of the defendant for three years by one-third of the net receipts did not change the relation

of master and servant between the parties, and make them co-partners during that time, and therefore, it was necessary to continue the restrictive covenants during that time.

Plaintiff now desires to show acquiescence by the defendant in plaintiff's construction of the agreements after October 1st, 1924, but nothing of that kind was pleaded.

Plaintiff's reference to the dictionary as to the meaning of the word "employ", does not change the construction of the agreements, because it was not plaintiff's business alone after October 1st, 1924, but the business of both of them, and neither was in the employ of the other. If it had been the intention of the parties to limit the scene of the activities of the parties after a dissolution of the partnership, it would not have required any legal ability to have done so, but no attempt was made to do so.

We must not forget, if as plaintiff contends we must consider the surrounding circumstances, that after commencement of the co-partnership on October 1st, 1924, the patients were in a very real sense the patients of the defendant, as it was the defendant, and not the plaintiff, who treated all of them, and his interest, which he desired to protect, was as great, if not greater than that of the plaintiff. This is clearly apparent, when you consider that plaintiff, from April 1st, 1919, the date of the first agreement conducted the business, or profession, in question, through a paid employee, the defendant, until October 1st, 1924, when the co-partnership came into being, and presumptively could have conducted the business, or profession, at the same place, through another paid employee at any time after the co-partnership should be dissolved, as under the second agreement plaintiff had agreed to furnish and pay an assistant; whereas, the defendant, a comparatively young man, would, if plaintiff's construction of the agreements be accepted, have been compelled to give up practice in Brooklyn for three years, and by such construction his practice would have been ruined, and he would have been compelled to start over again to establish a practice outside of Brooklyn, and no such construction should be placed upon the said agreements.

In the brief, on behalf of the plaintiff, the word "benefactor" is frequently applied to him, but it seems to me that the benefactions were mutual.

Construing the agreements as I do the complaint does not state a claim on which plaintiff is entitled to relief, and does not state facts sufficient to constitute a cause of action.

The motion to strike out the first defense alleged in defendant's answer is denied.

The motion of the defendant for a summary judgment, dismissing the action on the pleading, the complaint, is granted with costs.

Settle order and judgment on notice, submit proposed findings of fact and conclusions of law on which to base judgment in accordance with this opinion.