KANE REALTY CO., INC., Plaintiff, *v.* NATIONAL CHILDREN'S STORES, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 23, 1938.

*Hecht & Glaser*, for the plaintiff.

*Friedman, Marx & Handler* [*Nathan Friedman* and *Leslie Handler* of counsel], for the defendant.

EDER, J. Plaintiff is a licensed real estate broker. Defendant was the tenant of one Rose Abraham, occupying premises No. 440 Fulton street, Brooklyn, N. Y. Defendant engaged plaintiff to procure for it a subtenant for said premises and agreed to pay it a commission for its services. The agreement of employment is in writing and provides that plaintiff is to receive the sum of $240 for lease of one year between defendant and the subtenant, and in the event the subtenant exercised a certain option contained in the lease plaintiff was to be paid a further sum of $760. The mentioned agreement of employment is dated April

26, 1938. Plaintiff procured a subtenant fully acceptable to defendant and, after the parties had fully come to terms, the matter was postponed to April 29, 1938, to enable defendant's attorney to draw a formal lease which defendant and the subtenant were to sign on that day. Upon the parties coming to terms the defendant's attorney thereupon prepared the mentioned agreement of employment which forms the basis of this action.

The parties met on April 29, 1938, to sign the formal lease drawn by defendant's attorney, and it was duly signed and executed. After the execution of the lease the plaintiff was requested to sign and did execute an additional agreement which contained a term and condition not contained in the original agreement of employment, i. e., a provision that the commission was not to be paid to plaintiff until the sublease which had been executed by the parties was approved by the parent landlord (Rose Abraham). The subtenant took possession, but later, the parent landlord not approving of the sublease, the subtenant removed from the premises on June 14, 1938.

Though by the express terms of the agreement of modification commission was not to be paid to the plaintiff until the sublease which had been executed was approved by the parent landlord, none the less, the defendant, on or about May 13, 1938, upon demand made by the plaintiff for its commission, paid the plaintiff the sum of $100 on account thereof, and this action is brought to recover the balance of $140. The defendant is counterclaiming the sum of $100 that it paid under the circumstances heretofore mentioned.

Plaintiff maintains that the agreement of modification of April 29, 1938, is void for want of consideration — and it is undisputed no consideration passed therefor — and relies on the well-settled rule that when the broker procures a person ready, able and willing to take upon the terms of the principal, he has fully performed his contract and thereupon has earned and becomes fully entitled to his compensation (*Bernstein* v. *Fulson Realty Co.*, 152 N. Y. Supp. 995) and that a subsequent agreement that he shall not be compensated except upon other terms and conditions is void in the absence of a consideration for the modification. (*Bernstein* v. *Fulson Realty Co., supra.*)

This contention would ordinarily be controlling except for the comparatively recent enactments with respect to the Personal Property Law (§ 33, subd. 2) and Real Property Law (§ 279), which provide that no consideration is essential for a subsequent agreement if it is in writing and is signed by the party against whom it is sought to enforce the change or modification.

Subdivision 2 of section 33 of the Personal Property Law provides:

" Validity of certain agreements made without consideration. 2. An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement changing, modifying or discharging such contract, obligation, lease, mortgage or security interest, shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge."

Section 279 of the Real Property Law provides to like effect.

These enactments in their present form became effective April 6, 1936 (Laws of 1936, chap. 281). These statutes are declarative of the legislative policy of the State on this subject, and even if they constitute acts changing the common law it is a long-established rule that a statute in derogation of the common law may be validly enacted. (*Billings* v. *Baker*, 28 Barb. 343; McKinney's Consol. Laws of New York, book 1, § 142, p. 212, " Statutes and Statutory Construction.") Because of this radical change in the existing law of contract the court has examined into the background and history of this legislation. (*Woollcott* v. *Shubert*, 217 N. Y. 212.) The Law Revision Commission, in its report (N. Y. Legis. Doc. [1936] No. 65-D), discussed specifically the very problem here involved, where a broker, after having procured a purchaser acceptable to his principal, is required to sign a further agreement providing for his compensation upon the happening of other events than those contained in his original contract of employment, and his later repudiation of it, claiming it was not binding upon him for want of consideration, and these new sections were designed to prevent the broker from making any such claim. (See N. Y. Legis. Doc. [1936] No. 65-D, p. 168, " The Modification of Existing Obligations." And see, particularly, pp. 162, 166; also p. 167, etc.)

These legislative enactments now overrule the existing cases that a modification of a brokerage contract is *nudum pactum* in the absence of a consideration therefor. None now is necessary where the agreement is " in writing and signed by the party against whom it is sought to enforce the change, modification or discharge."

In the instant case the modification agreement which changed or modified the original brokerage contract is in writing and is signed by the broker plaintiff, and is, therefore, within the meaning of the mentioned statutes, and would, were it not for other considerations, deprive plaintiff of a recovery.

This modification agreement was made on April 29, 1938, and by its express terms it provided that "no commission shall be payable to you [plaintiff] until the above-mentioned sublease has been approved by the parent-landlord." Yet, subsequent thereto, on or about May 13, 1938, defendant, as previously mentioned, paid plaintiff $100 on account of its commission. This, in legal effect, was a mutual rescission and abrogation of the modified agreement and thus restored the original agreement to its full vitality; "each of the parties is returned to his previously existing rights. So where a contract which is a modification of another is rescinded, the party may resort to his rights under the original contract." (13 C. J. § 683, p. 623.) "Where a party, even without right, claims to rescind a contract, if the other party agrees to the rescission or does not object thereto and permits it to be rescinded, the rescission is by mutual consent. So a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other." (13 C. J. § 624, p. 601.) There was here, by this act of the defendant, a complete surrender of every advantage under the modification agreement, and this in operation and effect constitutes a rescission." (*Marr* v. *Tumulty*, 228 App. Div. 559.) Parties to any agreement may, by mutual consent, abrogate it (*Peabody* v. *Interborough Rapid Transit Co.*, 212 App. Div. 502; *People* v. *Rockwood*, 126 Misc. 542; *McCreery* v. *Day*, 53 Hun, 630, Mem.; opinion in full, 6 N. Y. Supp. 49; affd., 119 N. Y. 1), and cancellation of an agreement may be evidenced by implication or inference quite as effectively as by express words, and whether it has taken place must be determined by all the circumstances in evidence which affect it. (*Schwartzreich* v. *Bauman-Basch, Inc.*, 105 Misc. 214; affd., 188 App. Div. 960; affd., 231 N. Y. 196; *Rockart* v. *City of Mt. Vernon*, 140 Misc. 270.)

A court of justice should not be astute to deprive one of compensation earned and should not lend its aid in support of technical defenses to avoid payment of a just debt, but should bend its efforts to the attainment of substantial justice. Plaintiff has fully earned its compensation and is entitled to judgment accordingly.

Judgment is awarded in favor of plaintiff and against the defendant for the sum of $140, and the defendant's counterclaim is dismissed upon the merits.