BOWLES v. LEITHOLD et al.

No. 3938.

District Court, E. D. Pennsylvania.

May 28, 1945.

Robert J. Callaghan, District Enforcement Atty., William N. J. McGinnis, Chief Litigation Atty., and Sydney M. Friedman,

Enforcement Atty., all of Philadelphia, Pa., for plaintiff.

Shapiro & Shapiro, of Philadelphia, Pa., for defendants.

KALODNER, District Judge.

This is an action for an injunction brought by the Administrator of the Office of Price Administration pursuant to Section 205(a) of the Emergency Price Control Act of 1942, 56 Stat. 23, as amended, 50 U.S.C.A.Appendix, § 925(a). The defendants, William and Emily Leithold, individually and as copartners trading as the Custom Maid Brassiere Company, are charged with failing to comply with the basic record-keeping provisions of General Maximum Price Regulation (7 F.R. 3153) and Maximum Price Regulation No. 220 (7 F.R. 7282). Sections 1499.11 and 1499.12 of the General Maximum Price Regulation require the preparation and retention of a base period statement and current pricing records. Section 1215.1557 of Maximum Price Regulation No. 220 requires certain additional reports to be filed with the Office of Price Administration.

The defendants admit that they are subject to these regulations, and further, that they have violated the provisions set out above. It may be said, however, that since the filing of this bill the defendants have complied, in so far as form is concerned, with the record keeping requirements of the General Maximum Price Regulation. At the hearing the defendants, through their counsel, stated that they had discontinued the manufacture of elastic garments and would not in the future manufacture the same; hence, they are no longer subject to Maximum Price Regulation No. 220.

The only questions which remain for disposition are whether an injunction ought to issue, and if so, whether the injunction sought by the plaintiff is too broad in its coverage.

The hearing was on a motion for preliminary injunction, but the parties have stipulated that it be considered as a final hearing on this matter.

On the basis of the stipulations between the parties, the arguments and the briefs of counsel, I make the following findings of fact:

1. Plaintiff is the Administrator of the Office of Price Administration.

2. Defendants are copartners engaged in the business of manufacturing and selling, other than at retail, brassieres.

3. On May 11, 1942, the General Maximum Price Regulation (7 Fed.Reg. 3153 et seq.), called GMPR, issued by the Office of Price Administration pursuant to the provisions of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., became effective establishing maximum prices, inter alia, for the sale of brassieres not containing rubber. Since that date, said Regulation, as amended, has been and still is in effect.

4. On September 19, 1942, Maximum Price Regulation No. 220 (7 F.R. 7282) duly issued by the Office of Price Administration pursuant to the provisions of the Emergency Price Control Act of 1942, became effective establishing maximum prices, inter alia, for the sale of brassieres containing rubber. Since that date, said Regulation, as amended, has been and still is in effect.

5. Section 1499.11 of the General Maximum Price Regulation required that all sellers subject thereto prepare, on or before July 1, 1942, on the basis of all available information and records, a statement showing the highest prices charged for such commodities as they delivered during March, 1942, their offering prices for the delivery of such commodities during the said month, together with an appropriate description or identification of each such commodity, as well as showing their customary allowances, discounts, and other price differentials.

6. Section 1499.12 of the General Maximum Price Regulation provides that every person selling commodities for which maximum prices are established thereby shall keep records showing as precisely as possible the basis upon which he determined maximum prices for those commodities delivered by him after May 11, 1942, the effective date of the said Regulation.

7. Section 1315.1557 of Maximum Price Regulation No. 220 requires sellers of commodities containing rubber to file with the Office of Price Administration certain reports of maximum prices for such commodities.

8. The defendants did not, on or before July 1, 1942, nor at any time prior to the institution of this suit, on October 2, 1944, prepare the base period statement required by Section 1499.11 of the General Maximum Price Regulation.

9. The defendants did not, at any time prior to the institution of this suit on October 2, 1944, keep any records showing

the basis upon which they determined maximum prices for commodities sold by them since May 11, 1942, as required by Section 1499.12 of the General Maximum Price Regulation.

10. The defendants did not, at any time prior to the institution of this suit, file any reports required to be filed under Section 1315.1557 of Maximum Price Regulation No. 220, nor were such reports filed at the time of the final hearing herein which was held on October 23, 1944.

### Discussion

■ Since defendants have admitted their failure to comply with the record-keeping regulations, it is clear that an injunction may be issued in the discretion of the court, even where the violations complained of have ceased. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 327, 64 S.Ct. 587, 88 L.Ed. 754.

■ I am of the opinion that the record in this case warrants the issuance of an injunction in respect to the base period and current price record-keeping provisions of the Regulations. However, the question to which the parties devoted the greater part of their attention concerns the permissible extent, or scope, of the injunction. It is strongly urged on behalf of the defendants that the decree [1] prayed for

by the Administrator is too broad in that the effect of paragraph D thereof is to require compliance with the maximum price provisions of the General Maximum Price Regulation and Maximum Price Regulation No. 220, whereas the bill of complaint alleges only violation of the record-keeping requirements of those Regulations.

■ It is an undisputed precept of long standing that applications to an equity court for relief are addressed to the sound discretion of the court, and such relief may be granted as the court deems desirable and necessary in the interests of the parties under the circumstances in which they appear before the court. Meredith v. Winter Haven, 1943, 320 U.S. 228, 235, 64 S.Ct. 7, 88 L.Ed. 9. The question is, therefore, whether it would be an abuse of discretion to issue an injunction which would include Paragraph D.

The Emergency Price Control Act of 1942, and its amendments, in no way modifies this precept. Hecht Co. v. Bowles, supra. The Report of the Senate Committee [2] which handled this legislation states, "Such courts are given jurisdiction to issue whatever order to enforce compliance is proper in the circumstances of each particular case." Moreover, the broad language employed by Congress in subsections (a), (e), and (g) of Section

---

[1] The Price Administrator demands:

1. A preliminary and final injunction enjoining the defendants, their agents, servants, and employees, and all other persons in active concert or participation with the defendants or any of them from:

A. directly or indirectly selling or delivering any of the commodities within the purview of GMPR unless and until the defendants prepare, keep and make available for examination by any person during ordinary business hours said base period statement as required by Section 1499.11(b) of the said GMPR;

B. directly or indirectly selling or delivering any of the commodities within the purview of GMPR unless and until the defendants prepare, keep, and make available for examination by the Office of Price Administration said current pricing records as required by Section 1499.12 of the said GMPR;

C. directly or indirectly selling or delivering any of the commodities within the purview of the said MPR 220 unless and until the defendants first file the reports required to be filed by Section 1315.1556(b) of the said MPR 220;

D. directly or indirectly selling or delivering any of the commodities within the purview of the said GMPR and the said MPR 220 in excess of the maximum prices established therefor by the said Regulations, as amended, or as they may be amended from time to time hereafter, or by any other Regulation hereafter issued establishing maximum prices for such commodities;

E. offering, soliciting, or agreeing to do any of the foregoing.

2. That a mandatory order be issued against the defendants, their agents, servants, employees, and all other persons in active concert or participation with the defendants, requiring them or any of them to keep for examination by the Office of Price Administration all records required to be kept by the General Maximum Price Regulation, as amended, and Maximum Price Regulation No. 220, as amended, and to file with the Office of Price Administration all reports required to be filed under the provisions of MPR 220, as amended, or as they may be amended from time to time hereafter.

[2] Sen. Rep. No. 931, 77th Cong. 2nd Sess. page 10.

205 of the Act, 50 U.S.C.A.Appendix, § 925(a), (e), and (g), indicates approval of the use of this discretion to the fullest extent in carrying out and enforcing the provisions of the Act and of the regulations.

■■■ Even aside from consideration of the statute involved, there is discoverable in the opinions of the Supreme Court the view that where the public interest is concerned, the discretion of the court is given wider latitude. In United States v. Morgan, 1939, 307 U.S. 183 at page 194, 59 S.Ct. 795 at page 801, 83 L.Ed. 1211, it is stated: "It is familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and the manner of moulding its remedies, may be affected by the public interest involved."

And in Hecht Co. v. Bowles, supra, involving the same statute here under consideration, the Court said, at page 331 of 321 U.S., at page 592 of 64 S.Ct., 88 L.Ed. 754, "For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases."

As a result, courts of equity may; and frequently do, go much farther to give relief in furtherance of the public interests than they are accustomed to go when only private interests are involved. Bowles v. Montgomery Ward & Co., 7 Cir., 1944, 143 F.2d 38, 42. Nevertheless, the discretion of the court to write broad injunctions is not unlimited; thus, an injunction against all possible breaches of a statute is too general in character. Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; New York, New Haven & Hartford R. Co. v. Interstate Commerce Commission, 1906, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515. The boundary of the court's discretion was recently commented upon in the case of National Labor Relations Board v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930. While there is a conflict in the interpretation of that case, see National Labor Relations Board v. Air Associates, 2 Cir., 1941, 121 F.2d 586 and National Labor Relations Board v. Standard Oil Co., 2 Cir., 1943, 138 F.2d 885, 888, the view of the Supreme Court is adequately summarized in Bowles v. May Hardwood Co. 6 Cir., 1944, 140 F.2d 914, at page 916: "There (N.L.R.B. v. Express Publishing Co.) it was pointed out that the breadth of an administrative order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity and relation to those unlawful acts which have been found to have been committed in the past. While 'A federal court has broad power to restrain acts which are of the same type [or class] as unlawful acts which the court has found to have been committed, or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past,' yet 'The mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged.' But, 'It is a salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts.' Pages 435, 436 of 312 U.S., page 699 of 61 S.Ct., 85 L.Ed. 930."

The injunction sought here, however, is not so general as to cover the entire statute; it is restricted to violations of the record-keeping and the maximum price provisions of the same regulation, and embraces only those commodities concerning which the defendants have failed to comply with the record-keeping provisions.

The relation of the record-keeping provisions to the maximum price provisions is apparent: the latter are ineffective except for the former, and the record-keeping provisions are to no avail but for the maximum price provisions. Failure to maintain records does not violate the price-control policy of the Price Control Act, but it does make clear the way for infringing the policy of that Act through violation of the maximum price provisions. The two provisions are not independent of each other. On the other hand, refusal to bargain, which constituted the violation in the Express Publishing Co. case, is not only a violation of the Labor Relations Act, but also an independent violation of the policy of that Act.

It is also worthy of note that the possibility of judicial usurpation of a matter primarily of administrative cognizance, which to some measure influenced the Court in the Express Publishing Co. case, does not exist here.

Clearly, the decision in that case does not change the rule that a court of equity may mould its decree to suit the circumstances of the case and the needs of the public interest. In approaching a case such as the one at bar, the court should not consider the controversy as existing merely between an agency of the Government and a defendant, Bowles v. Montgomery Ward & Co., supra; nor should the court administer Section 205(a) grudgingly, Hecht Co. v. Bowles, supra. In the latter case, 321 U.S. at page 331, 64 S.Ct. at page 592, 88 L.Ed. 754, the Supreme Court made evident the *duty* of the courts in this type of case: "The Administrator does not carry the sole burden of the war against inflation. The courts also have been entrusted with a share of that responsibility. *And their discretion under § 205(a) must be exercised in the light of the large objectives of the Act.* For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases. *That discretion should reflect an acute awareness of the Congressional admonition that 'of all the consequences of war; except human slaughter, inflation is the most destructive'* (S.Rep. No. 931, supra, p. 2) *and that delay or indifference may be fatal."* (Emphasis supplied.)

In view of the foregoing, I am of the opinion that it is a proper exercise of discretion to grant the injunction requested by the Administrator. The defendants have persisted in noncompliance with these record-keeping requirements since their inception. They have violated, and continued to violate for a two-year period, the one requirement of our price control system which makes it possible for them to conduct their business without regard to our wartime economy in the greatest degree of safety from detection. Such violation not only makes it possible to exceed ceiling prices, but makes it difficult and burdensome for the price control officials to determine at this time whether the records which are now submitted, or which will be submitted, are accurate and honest. The additional sanction afforded by the injunction here sought is not merely desirable, but necessary in the public interest.

The merit, if any, in the argument that this is government by injunction is out-weighed by the advantages of efficient enforcement of the Act. As pointed out by Judge Clark in his dissent in Bowles v. Sacher, 2 Cir., 1944, 146 F.2d 186, 188, in the Second Circuit: "The courts who 'also have been entrusted with a share of that responsibility' of the war against inflation, Hecht Co. v. Bowles, 321 U.S. 321 at page 331, 64 S.Ct. 587, at page 592 [88 L.Ed. 754], are already and for better or for worse engaged in that job. * * * As the Seventh Circuit Court well said in the Montgomery Ward case, supra, 143 F.2d 38 at page 43, 'Any easy attitude of the courts which even remotely suggests that the Act may be violated with impunity strikes at the entire enforcement problem.' "

The defendants have cited Bowles v. Sacher, supra, but there the majority decided only that the lower court did not abuse its discretion in refusing the relief prayed for. If anything, the case reaffirms the broad discretion vested in the trial judge.

Concerning the defendants' vigorous contention that the precedent there established should apply in the instant case it must be pointed out that the fact situation in the Sacher case is strikingly different from the fact situation in the case at issue.

In the Sacher case the suit by the OPA was instituted on September 21, 1943, so that in that case the defendant had only been in default for a period of a year and three months in the maintenance of base period and current price records.

In the case at issue, on the other hand, the suit was instituted on October 2, 1944, so that the defendants were in default for a period of two years and three months. Also one can understand the reluctance of the District Court in the Sacher case to issue the more drastic injunction against violation of ceiling prices at a time when the price control economy was in its swaddling clothes, and was so striking a change from the uncontrolled practices of our peace-time economy. However, here the defendants were in default for two years and three months over a period in which the Emergency Price Control Act and its administration had become ingrained as part of the warp and woof of the fabric of our wartime economy.

Finally, anent the ruling in the Sacher case, I must say that I am not in accord with the statement of the District Court[3]

[3] 53 F.Supp. 77, 78 (S.D.N.Y., 1943).

that it could "see no * * * intention spelled out or discoverable by implication" in the OPA statute to authorize broad injunctions. On that score I am in accord with the statement in the dissenting opinion of Circuit Judge Clark that Sec. 205(a) of the Emergency Price Control Act "* * * is, however most broad in terms in its several references to 'any person' and to 'any acts or practices which constitute or will constitute' a violation of the Act or the regulations under § 4, 50 U.S. C.A.Appendix § 904. Most significantly it provides for application for injunction 'whenever in the judgment of the Administrator' any person has engaged in such acts, a judgment of the official having the primary duty in the premises, which is here set at nought. And this construction seems made quite clear by the later Stabilization Extension Act of 1944, § 107."

With respect to Bowles v. Fisher & Co., Inc., 1 Price Control Cases Sec. 51,027 (S.D.N.Y., 1943), it may be noted that Paragraph A3 [4] of the injunction sought therein is substantially broader than Paragraph D here involved. That section does not set forth the definite or specific acts enjoined and may be characterized as a general injunction against all possible breaches; hence, it must fall. Swift & Co. v. United States, supra. In so far as Section 383 of 28 U.S.C.A. and Federal Rule 65(d), 28 U.S.C.A. following section 723c, are concerned, I cannot agree that they are applicable here.

Accordingly, I state the following conclusions of law:

1. Defendants have violated the Emergency Price Control Act of 1942, as amended, by failing to prepare on or before July 1, 1942, or at any time prior to October 23, 1944, the statement of March 1942 maximum prices, commonly known as a "base period statement" as required by Section 1499.11 of the General Maximum Price Regulation.

2. Defendants have violated the Emergency Price Control Act of 1942, as amended, by failing to keep records showing the basis upon which they determined maximum prices for such commodities sold by them after May 11, 1942, as required by Section 1499.12 of the General Maximum Price Regulation.

3. Defendants have violated the Emergency Price Control Act of 1942, as amended, by failing to file reports of maximum prices as required by Section 1315.1557 of Maximum Price Regulation No. 220.

4. The fact that defendants have, since the institution of this suit, prepared the base period statement and current pricing records required by Sections 1499.11 and 1499.12 respectively of the General Maximum Price Regulation is not a bar to the issuance of an injunction in this case.

An injunction may issue.

An order may be submitted in accordance with this opinion.

---

[4] The paragraph reads: "Doing or omitting to do any other act in violation of said regulation as heretofore or hereafter amended, or in violation of any other regulation hereafter issued establishing maximum prices for said commodities."