COMPUTER LEASING CO. *v.* COMPUTING & SOFTWARE, INC.,
ET AL.

[Cite as Computer Leasing Co. v. Computing & Software
(1973), 37 Ohio Misc. 19.]

(No. 73CV-06-2126—Decided August 14, 1973.)

Court of Common Pleas of Franklin County.

*Mr. Thomas Palmer,* for plaintiff.
*Mr. David Hiller,* for defendants.

SHOEMAKER, J.  Plaintiff, Computer Leasing Company
(hereinafter, Computer Leasing) is the owner of a com-
puter and peripheral equipment leased to defendant, Com-

puting & Software, Inc. (now known as and hereinafter referred to as Cordura), by a lease agreement amendment (actually an assignment) entered into by the parties on June 9, 1972. A dispute later arose concerning liability for damage to the computer incurred during transportation. Negotiation and arbitration attempts failed. Cordura withheld rent payments totaling approximately $16,000 to partially cover expenses directly and indirectly related to repair of the damaged computer, an amount in the neighborhood of $26,000. Computer Leasing filed a complaint in this court seeking replevin of the computer, the back rent due, and the accelerated amount of rent due over the entire term of the lease. Computer Leasing sought a writ of replevin under R. C. Chapter 2737 to immediately regain possession of the computer. Cordura sought and received a stay of the writ of replevin and a pre-seizure hearing pursuant to *Fuentes* v. *Shevin* (1972), 407 U. S. 67, 92 S. Ct., 1983, was held.

## I

Defendant was entitled to and did receive a *Fuentes* hearing, at which counsel for both parties were present to present evidence and arguments. Cordura had not waived this right when it signed the lease amendment, as the *Fuentes* decision was handed down after the lease was signed. Such a "waiver" is not a relinquishment of a *known* right or privilege.

While there may be constitutional defects in Ohio's replevin statutes (a question which this court was not called upon to and does not reach), such defects, if any, were cured by the hearing held in this case.

The first major question in this case is: What is the correct *Fuentes* hearing test or standard, to be applied in a replevin case, after a proper due process hearing and before final adjudication on the merits of the whole case? Counsel in their memoranda agree, and the court finds, from reading *Fuentes*, 92 S. Ct., at 2002-3, and footnotes 32 and 33, that the appropriate test is whether the plaintiff can establish the *probable validity* of his claim for repossession. The court finds support for this position in House Bill

710, pending in the General Assembly, which will amend R. C. Chapters 1919 and 2737 to provide for pre-seizure replevin hearings, with probable validity of plaintiff's right to possession as the test.

Probable validity is left undefined and considered an area for state legislation in the *Fuentes* opinion. Probable validity is likely to prove only slightly less slippery a term than probable cause. Justice Stewart gives at least a hint of the plaintiff's minimum burden of proof when he states that "the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property." (92 S. Ct., at 2002.) If merely avoiding mistakes was sufficient to cure the due process defects in the summary replevin statutes, closer judicial or clerical scrutiny in *ex parte* proceedings or higher requirements of factual detail in replevin affidavits would seem to be enough to make the procedure constitutional. *Fuentes* does not stop there, however. It mandates a pre-seizure hearing that provides a "real test" of the "probable validity" of plaintiff's right to possession.

This brings the court to a central issue in this case and a question left unanswered in *Fuentes*: Does the defendant in a pre-seizure hearing have the right to raise both negative ("I'm not a default. Here's the cancelled check") and affirmative ("I'm in default but you broke a promise or covenant which excuses me") defenses? The Supreme Court expressly left this issue unresolved. (92 S. Ct. 1997, footnote 17.) Indeed, an affirmative defense was Mrs. Fuentes' sole defense on the merits in the court below and that defense is closely analogous to the one raised here. The court realizes that the details of *Fuentes* hearings were left to state legislation (92 S. Ct., at 2002), and that states may set up procedures in particular types of cases which preclude defendants from raising certain affirmative defenses, *Lindsey* v. *Normet* (1972), 405 U. S. 56, 92 S. Ct. 862. But this court is of the opinion that if the pre-seizure hearing is to be fair (in the sense of allowing both sides an opportunity to present their available, good-faith legal arguments) and to provide a real test (in the sense of allow-

ing the court to consider *all* relevant factual and legal matters before making a decision), such a hearing must include the right to raise affirmative defenses. Absent some limiting legislation, preclusion of affirmative defenses would turn the hearing into a proceeding only slightly more fair than an *ex parte* appearance by plaintiff, as defendant would be unduly restricted to disproof of plaintiff's assertions, when valid affirmative defenses may exist which could entitle defendant to possession until final adjudication. The court notes parenthetically that reduced time between the commencement of suits and trials on the merits would eliminate much of the need for *Fuentes* hearings.

## II

Turning to this particular case before the court, Cordura is alleging that it has a right to set off the expenses it incurred in repairing the damaged computer against the withheld rent and thus defeat Computer Leasing's right to replevin for default of rent payments. Computer Leasing relies on Clause 17 of the original lease agreement, which provides in part: "Remedies Upon Default. In the event of the occurrence of default as specified above, lessor shall have the right to: (a) Terminate this lease and declare all rentals immediately due and payable * * * and (b) Take immediate possession of the leased equipment * * *." Cordura relies on the case of *Fairmont Creamery Co. v. Ewing* (1932), 43 Ohio App. 191, as authority for its proposition that a set-off or counterclaim will defeat replevin.

The court does not feel that *Fairmont Creamery* is persuasive precedent. The set-off as a defense to replevin issue is treated as a pleading question in the syllabus. One other Ohio case, *Stone v. Guardian Trust Co.* (Municipal Court of Cleveland, 1934), 1 Ohio Opinions 529, cites *Fairmont Creamery*, at page 531, but the reference is to the pleading issue and is only dictum. An OBAR computer search of Ohio law shows no case in point, directly or remotely. A search of nationwide law in 66 American Jurisprudence 2d, Replevin, Section 49, 77 Corpus Juris Secundum, Replevin, Section 82, and 151 A. L. R. 519, reveals a split of authority on the question and a tendency

of the older cases to address themselves to the propriety of pleading set-off in replevin cases, an issue which is now solved by the newer liberal counterclaim provisions of the Rules of Civil Procedure. This court is of the opinion that unless the set-off or counterclaim or affirmative defense is of such a nature as to give defendant a right to possession, plaintiff may recover the property by replevin. Replevin is, after all, only a remedial device to restore property to the person who has the right to possession. The underlying property concepts determine who wins the replevin action. In this case, Computer Leasing's alleged failure to insure the computer in transit does not vest Cordura with a right to possession. This failure, if proven, would only create a right to recover money damages. While this cause of action to recover money damages is exactly what Cordura claims relieves them of their obligation to pay three months back rent, it in no way creates in them a right to possession of the computer. The alleged oral covenant to insure is independent from their promise to pay rent, and breach of the former does not excuse breach of the latter. Computer Leasing has established the probable validity of its claim to the computer under the default remedies clause of the lease and is entitled to replevy the computer. Cordura may, of course, re-argue its right to possession and argue its right to money damages at trial.

While the procedure for both parties posting bonds is not a proper substitute for a pre-seizure hearing, there is nothing in *Fuentes* which says that posting bonds is improper after a hearing and before trial.

Therefore, counsel for plaintiff Computer Leasing may prepare an entry consistent with this decision.