The F. & M. SCHAEFER CORPORATION
and the F. & M. Schaefer Brewing
Co., Plaintiffs,

v.

ELECTRONIC DATA SYSTEMS CORPO-
RATION and E. D. Systems
Corporation, Defendants.

No. 76 Civ. 3982.

United States District Court,
S. D. New York.

March 28, 1977.

Thomas K. Christo, Boston, Mass., for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler by Sheldon J. Oliensis, Milton Sherman, New York City, Hughes, Luce, Hennessy, Smith & Castle by Phillip N. Smith, Jr., Thomas W. Luce, III, Dallas, Tex., for defendants.

## MOTION FOR REPLEVIN

MOTLEY, District Judge.

*Findings of Fact and Conclusions of Law*

On September 7, 1976 the F. & M. Schaefer Corporation (Schaefer) filed this action against Electronic Data Systems Corporation (EDS) alleging breach of contract and a cause of action for rescission of another contract based on EDS' alleged fraudulent misrepresentations. Schaefer prays for $45 million compensatory damages plus punitive damages. EDS answered the complaint on November 11, 1976 and asserted numerous counterclaims against Schaefer.[1]

On this same day, EDS filed its motion for replevin of Schaefer's data processing system alleging that it had previously developed this system and had turned the system over to Schaefer in stages during 1975 and 1976 pursuant to agreement. Schaefer filed a reply to the motion for replevin on November 15, 1976.

The court held hearings on the replevin motion on March 7, 8, 9, 10, 14, 15, and 16, 1977 and now makes its findings of fact and conclusions of law with respect thereto.

In 1969 EDS and Schaefer entered into a contract for the development and supply of data processing services. The term of the contract was seven years. Under Phase 1 of this agreement, which was to end in 1972, Schaefer turned over its old data processing system, and while EDS ran this old card system for Schaefer, EDS developed a more sophisticated, more modern and much faster tape system to meet Schaefer's data processing needs. Under Phase 2 of the contract EDS was to run the newly developed system for Schaefer until May of 1976.

Phase 1 was essentially completed by the end of 1972, but by this time Schaefer was in severe financial difficulty and requested EDS to defer certain required payments for two years, approximately $1,507,000 in development costs and approximately $35,000 in monthly service charges. The result was a new 1973 agreement governing Phase 2 which (although not explicitly) superseded the 1969 agreement.

1. The court's jurisdiction is based on diversity of citizenship. Plaintiffs are New York corporations and their principal place of business is here as well. Defendants are incorporated and have their principal place of business in Texas. Rule 65, Fed.R.Civ.P., provides that state remedies for the seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available to federal litigants. EDS brings this replevin action pursuant to New York C.P. L.R. §§ 7101, et seq., "Recovery of Chattel".

Under the 1973 contract the following changes, in essence, were made:

1. The original term of the contract would be extended for one and one-half years until the end of December, 1977, as opposed to May, 1976, the original termination date under the 1969 contract.

2. Monthly payments under the 1969 contract were reduced for 1973 and 1974, and these deferred charges were to be recovered by increased monthly payments in 1975 through 1977.

3. Services performed by EDS were to be reduced.

Under the 1973 contract Schaefer could cancel the contract, which by that time was for the running of the data processing system by EDS, and elect to operate its data processing system prior to the December 1977 termination date.

In order to terminate, two conditions had to be met: First, Schaefer had to pay a cancellation fee which was, in essence, the balance of all the deferred payments which otherwise would have been paid in monthly instalments to December, 1977. Second, Schaefer and EDS had to enter into a termination agreement concerning Schaefer's use of the system developed by EDS.

In its main suit Schaefer claims that EDS did not adhere to the contract, and that the system which EDS developed was faulty and caused great damage to Schaefer. Schaefer also claims that EDS fraudulently induced Schaefer to enter into the 1973 agreement. Schaefer seeks rescission of this agreement.

The court finds that Schaefer did turn over its old system to EDS around 1969. During Phase 1 of the 1969 contract, EDS did develop another system which was different from the one turned over by Schaefer.

Around 1974 Schaefer expressed an interest in cancelling the 1973 agreement and running its own data processing system. In 1975, in accordance with Task Order C of the 1973 contract, EDS did, in fact, begin turning over the new system to Schaefer. The turnover was accomplished in stages so that no continuity would be lost in Schaefer's data processing needs and so that the EDS personnel would have time to train Schaefer's personnel in the operation of the new system. In addition, EDS compiled additional documentation in 1976 which Schaefer had requested.

The turnover was completed in August, 1976. No company other than Schaefer and EDS was responsible for any portion of Schaefer's data processing system.[2]

During the period of time during which EDS was turning the system over to Schaefer, its agents met with Schaefer's agents. Throughout the course of the several meetings Schaefer's agents asserted on numerous occasions that Schaefer fully intended to pay the cancellation fee of $1,200,933.68 which Schaefer was obligated to pay as a condition of early cancellation under Task Order C and a sliding buy-out schedule which had been agreed upon by the parties, and any monthly charges due.

The court finds that EDS would not have turned over its system if it did not fully expect the payment of the amount of approximately $1,300,000. The court further finds that by early 1976 Schaefer had no intention of paying this cancellation fee, although officers of Schaefer did assure EDS to the contrary. Schaefer's intention was to receive from EDS all necessary materials and instructions for the system and to have its own newly trained personnel run the system and then institute suit against EDS.

In support of its motion for replevin, EDS says that it has a superior possessory right to the system under the 1973 contract because that contract imposed two conditions on Schaefer for early turnover of the system. Schaefer has met neither of these conditions.

First, the court finds that Schaefer has not met the condition that it pay a cancella-

2. The computer programs and documents which were ultimately turned over to Schaefer are listed in Defendant's Exhibits 6 and 7 respectively.

tion fee of approximately $1,300,000 to EDS.

Second, the court finds that Schaefer did not enter into, nor was it willing to enter into the termination agreement specified under paragraph 6 of the 1973 contract regarding confidentiality.

■ The court, therefore, finds that EDS has made out a *prima facie* case for replevin.

■ Under *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), this court is obligated to provide Schaefer with a full and fair hearing before granting EDS's replevin motion. One aspect of this is that Schaefer is entitled to present any good faith defense to the claim of EDS that it has a superior possessory right to the system. We now turn to Schaefer's defenses.

■ Schaefer claims that the system which EDS turned over to it in 1976 was the same system which Schaefer turned over to EDS in 1969. If EDS did, indeed, turn over the very same system which it had received from Schaefer in 1969, Schaefer would have a good defense to the replevin action.

■ The court finds from the evidence adduced upon the hearing of the motion for replevin that this is not a good faith defense. The testimony of Schaefer's own personnel leads to the inescapable conclusion that the EDS system is substantially different from Schaefer's old system. Schaefer's own employee, Kenneth Koleman, qualified by Schaefer as an expert, pointed out that the EDS system was a tape system, while the old Schaefer system was a card operated system. From Koleman's description of both systems, the court finds that the tape system developed by EDS is a faster system; that Schaefer's old card system is now obsolete and is not capable of being operated on today's computers without substantial adaptations. The EDS system, the court finds, is a more sophisticated system, in that it uses the language of present day computers as opposed to the language employed with the card system.

Even if the EDS system is no improvement over the old Schaefer system in terms of ultimate reliability and accuracy; even if the EDS system was not worth the millions that Schaefer paid for it; even if the EDS system is peppered with errors (determinations which the court finds unnecessary to reach at this time), the fact remains that the EDS system is not the same one which Schaefer had given to EDS in 1969 and that the EDS system is different in that it is more sophisticated, more modern and faster.

■ Schaefer says that a defense to EDS's claim for approximately $1,300,000 cancellation fee is that the EDS system was faulty, costing Schaefer over forty-five million dollars in damages. Therefore, Schaefer argues, the $1.3 million claim is more than offset by Schaefer's claims on the merits. This being true, Schaefer continues, the replevin action should be tried in conjunction with the main case, presumably many months from now when discovery in the main action has been completed.

EDS found a Southern District case which reads:

"Even taking defendants' allegations of poor equipment performance as true, defendant fails to state a valid defense to a replevin claim where, as here, performance was not a condition of payment." *Honeywell Information System, Inc. v. Demographic Systems, Inc.,* 396 F.Supp. 273, 275 (1975).

In the instant case adequate performance of the EDS data processing system was not a condition precedent either to the payment of the cancellation fee or the turnover agreement specified in paragraph 6 of the 1973 agreement.

The only case cited by Schaefer which allegedly offers support for its claim that the poor performance of the system is a defense to replevin, supports just the opposite position. *Computer Leasing Company v. Computer and Software, Inc.,* 37 Ohio Misc. 19, 306 N.E.2d 191, 194 (Ohio Ct. of Com.Pleas 1973).

■ Another defense—and a more weighty one—is that the 1973 contract (under which EDS claims its superior possessory right) was entered into by Schaefer on the basis of fraudulent misrepresentations by EDS, and that the 1973 contract should be rescinded. It would appear initially that if, *arguendo,* the 1973 contract were rescinded due to misrepresentations by EDS, EDS' replevin action would fall, but on further examination this is not the case. Even if the 1973 contract were rescinded, EDS would still have a valid basis for its replevin claim under the 1969 contract, since the deferred payments were due under that contract.

The 1973 contract superseded the 1969 contract by necessary implication, although there is no explicit supersession clause in the 1973 contract. Therefore, if the 1973 contract were to be rescinded, the parties' relations would then be governed by the 1969 agreement, which had never been formally abrogated. *Kane Realty Co., Inc. v. National Children's Stores, Inc.,* 169 Misc. 699, 8 N.Y.S.2d 505, 508 (Municipal Court, City of New York 1938.)

Under the 1969 agreement the system was to be turned over to Schaefer on the contract's termination in April of 1976. But even if we assume that the 1969 contract is now in effect, the fact remains that Schaefer has not paid the approximately $1.3 million under that very contract. The question, therefore, is whether, although the 1969 contract calls for the transfer of the system to Schaefer in 1976, EDS is obligated to turn over the system when Schaefer owes it approximately $1,300,000.

Under paragraph 2 of the "Ownership, Conversion and Future Operation" section of the 1969 agreement, EDS was required, upon receipt of 12 months' notice of Schaefer's desire to operate its own data processing system, to notify Schaefer of its charge to convert to the computer system selected by Schaefer. In consideration of such charge, EDS was obliged to accomplish such conversion as may be necessary.

Under this paragraph a condition precedent to EDS' turnover of the system is obtainment of a conversion charge from Schaefer. Surely if Schaefer were to be $1.3 million in arrears on its monthly payments at the time that Schaefer wanted to get possession of the system, EDS would be entitled to demand its money before turning over the system. Furthermore, under the default clause of the 1969 contract, EDS could have terminated the agreement if Schaefer had failed to remit the approximately $1.3 million which it owed.

In sum, the court finds that the 1969 contract contains an implied condition precedent that requires Schaefer to pay all monthly charges before it would be entitled to get the system at the termination of the agreement. Thus, even if, *arguendo,* the 1973 contract is deemed rescinded, EDS would still be entitled to possession of the system under the 1969 agreement.

■ As a further defense, Schaefer claims that the tape reels and notebooks containing instructions and all copies of same are the property of Schaefer, since Schaefer paid for the blank tapes and blank paper and notebook bindings. The court deems this defense frivolous in this action for replevin, even if Schaefer's contentions are true.

■ Schaefer argues that the system developed by EDS is a body of intangibles, that is, concepts or ideas, and consists wholly of services rendered by EDS. Likening the system to a recorded song for which Schaefer supplied a blank disc, Schaefer says that just as a song cannot be replevied, so software in a data processing system cannot be made the subject of replevin.

The court finds this argument unpersuasive, especially since Schaefer has offered no case under New York law or any other law which holds that a data processing system, being wholly services or intangibles, cannot be made the subject of replevin. This system, the court finds, is quite tangible.[3]

3. See Defendant's Exhibits 6 and 7.

In addition to tapes, it consists of numerous instructions in notebooks and other documentation, some of which had been physically produced by Schaefer in the courtroom during the course of this hearing. These tapes, notebooks of instructions and other documentation were delivered by EDS to Schaefer during 1975–1976. There may be intangible parts of the system, consisting of the training given Schaefer's employees in how to operate the system, for example, but those intangible parts of the system, if they are part of it at all, are not a part of this motion for replevin. What EDS seeks are the tapes, the instructions, all supporting documentation *and all copies of same.*

 EDS having proved a superior possessory interest and Schaefer having failed to offer any good faith defense to a motion for replevin, the motion must be granted.

EDS has also asked for preliminary injunctive relief restraining Schaefer from divulging the system or permitting its use by others. Before the conclusion of the hearing on this motion the parties entered into a stipulation as to confidentiality. There is, therefore, no need for an injunction with respect to confidentiality.

However, in view of the request for equitable relief by EDS, the court is empowered to grant alternative relief to EDS with respect to the system. Under Rule 54(c), Fed.R.Civ.P., a federal court has the power to grant appropriate relief to the winning party even if not demanded in the pleadings. *United States v. Maryland Casualty Co.,* 384 F.2d 303 (2d Cir. 1967); *Lewis v. Dansker,* 68 F.R.D. 184 (S.D.N.Y.1974). The scope and form of the injunction should suit the circumstances of the case and the needs of the public interest. *Bowles v. Leithold,* 60 F.Supp. 909 (E.D.Pa.1945), *aff'd,* 155 F.2d 124 (3d Cir. 1945).

Accordingly, alternatively, Schaefer will be enjoined from using the system unless, pending the outcome of the trial on the

merits, it pays EDS the approximate amount of $1,300,000 due it, secured by a bond from EDS to Schaefer for twice that amount to cover any offset or costs to which Schaefer might be entitled. EDS may choose which relief—either replevin or the injunction—it prefers.

Submit order on notice.[4]

### AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 16, 1977 the court made oral Findings of Fact and Conclusions of Law which were formalized in a written opinion filed on March 28, 1977. Upon submission of the parties' proposed order and counter-order, the court has reconsidered the relief which should be granted and hereby amends its prior opinion as follows:

The court will grant the motion for replevin and enter judgment pursuant to Rule 54(b), Fed.R.Civ.P., there being no just reason for delay in the entry thereof, but the same will be stayed under Rule 62(h), Fed. R.Civ.P., on condition that Schaefer pay to EDS $1.3 million, in which event EDS shall post a bond for $2.6 million, all pending final disposition of the action.

---

4. Pursuant to Rule 54(b), Fed.R.Civ.P., the court finds that there is no just reason for delay as to the entry of judgment on EDS'

replevin action and will, therefore, enter partial judgment under that rule.