**TRIANGLE UNDERWRITERS, INC., Plaintiff,**

**v.**

**HONEYWELL, INC. and Honeywell Information Systems, Inc., Defendants.**

**No. 75 C 1333.**

United States District Court, E. D. New York.

Sept. 18, 1978.

Berman & Zivyak, New York City (Jeffrey L. Zivyak, New York City, of counsel), for plaintiff.

Breed, Abbott & Morgan, New York City (Thomas A. Shaw, Jr., and Leonard A. Mentzer, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

In this case plaintiff has moved for, among other things, an order striking defendants' third affirmative defense of the statute of limitations, and defendants have cross-moved for summary judgment dismissing all nine counts of the second amended complaint (referred to hereafter as the "complaint"). The motions have been submitted to the court on the basis of the pleadings, various written documents which passed between the parties, excerpts from certain depositions, and the answers to certain interrogatories. From these materials it appears that there is no genuine issue as to the following facts.

Defendant Honeywell, Inc. ("Honeywell"), a Minnesota corporation, develops and sells computer systems. In January 1970, Honeywell's New York office approached plaintiff Triangle Underwriters,

Inc. ("Triangle"), a New York corporation, to sell or lease to it Honeywell's H–110 computer system to replace the IBM 360–20 computer then used by Triangle for data processing. The H–110 system is a package consisting of "hardware", or the computer, printer, collator and other equipment, and programming or "software" created for use in connection with the hardware. Honeywell supplies both standard programming aids of general application to its computers and "Custom Application Software" specifically designed for the customer's individual needs.

On March 19, 1970 Honeywell submitted to Triangle a written "Letter and Formal Proposal" (the "Proposal") for the installation of the H–110 system. Triangle alleges that Honeywell warranted that the system was to be "turn-key", with the software pre-prepared and the system ready for immediate functioning. The Proposal sets forth an "implementation plan" reciting the steps to be taken to make the system fully operational within 105 days of approval of the Proposal. Honeywell employees were to install the system and train Triangle employees in its use, whereupon Triangle would take over complete supervision. The Proposal contained no provision requiring Honeywell to update or amend the software after the Triangle employees assumed supervision. A printed lease form for the rental of the hardware was attached to the Proposal. The parties executed the lease on April 3, 1970, and Honeywell began preparation of the "Custom Application Software."

In December 1970 Honeywell advised Triangle that the system was fully operational. Triangle then elected to purchase rather than lease the hardware, and on December 5, 1970 entered into an "Agreement for the Sale of Data Processing Equipment" (the "Agreement") with defendant Honeywell Information Systems, Inc. ("H.I.S."), a separately incorporated division of Honeywell. The system was installed in January 1971, at which time Triangle discontinued the IBM System.

Triangle contends that from the beginning the system failed to function effectively. At that time, according to Triangle, it discovered that various programs did not function as Honeywell had represented they would, that there were "numerous errors" in the programs, and that Honeywell had not "run a proper parallel system during the change-over period."

After the installation in January 1971 the Honeywell personnel attempted to correct the deficiencies in the programs, which under the Agreement should have been functioning properly at the time of installation. Modifications were made by Honeywell in various of the programs, and Honeywell personnel worked on them at the Triangle premises until some time in 1972 when they left.

Triangle brought this diversity action against Honeywell and H.I.S. on August 14, 1975 for damages for loss of business as a going concern, loss of profits, and expenses and special damages. Triangle's complaint contains nine counts alleging, in various forms, negligent or fraudulent inducement to enter into the contract, breach of a contemporaneous oral agreement to prepare custom application software, breach of express and implied warranties, negligence and fraud. The essence of Triangle's claim is that Honeywell failed in January 1971 to supply a fully operational software system to fulfill Triangle's data processing needs and failed thereafter to correct the deficiencies.

■ Since jurisdiction is based on diversity of citizenship, the forum's substantive state laws, including the choice of law rules, apply. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Statutes of limitations are "substantive". *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). To determine the applicable statutory periods the court must therefore decide which state's law a New York court would look to with respect to each count.

■ New York ordinarily chooses the law of the state where the center of gravity of

the transaction is located. *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954). Plainly then any tort claims are governed by New York law. Since the alleged agreements were negotiated, executed and performed in New York by Honeywell's New York employees, application of the center of gravity test suggests that New York law would also be applicable to the contract claims.

Section 10.4 of the written agreement, however, provides that the Agreement shall be governed by Massachusetts law. N.Y. Uniform Commercial Code § 1–105(1) permits the parties to a sale agreement to agree as to choice of law provided that the transaction bears a "reasonable relation" to the state chosen.

■ Triangle argues that the transaction has no connection with Massachusetts whatsoever and that the provision in the Agreement choosing Massachusetts law should be ignored. Massachusetts is Honeywell's principal place of business and the place where plaintiff was required to make payment. In light of the number of substantially identical agreements it enters with customers in various states, Honeywell has an interest in having those agreements governed by one body of law. The courts in this state have allowed contractual choice of law provisions to stand despite minimal contacts with the chosen state. *See Fleischmann Distilling Corp. v. Distillers Co. Ltd.,* 395 F.Supp. 221 (S.D.N.Y.1975); *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.,* 323 F.Supp. 1300 (S.D. N.Y.1970).

In any event, with respect to Triangle's contract claims the choice between New York and Massachusetts makes no practical difference, since the court holds that those claims are governed by the limitation for breach of contract contained in the Uniform Commercial Code ("U.C.C.") adopted in both Massachusetts and New York. *See Cyclops Corporation v. Home Insurance Company,* 389 F.Supp. 476, 480 (W.D.Pa. 1975). Hence the court need not decide whether the choice of law provision in the written Agreement applies as well to the alleged contemporaneous oral agreement to prepare software.

Honeywell urges that the counts are all barred by § 2–725(1) of the U.C.C. which provides, in pertinent part, "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.Y.U.C.C. § 2–725(1); Mass.G.L.A. ch. 106 § 2–725(1). This section applies to "transactions in goods", *see* U.C.C. § 2–102, and a "cause of action accrues when the breach occurs." U.C.C. § 2–725(2).

Honeywell contends that the essence of all the claims, regardless of their various characterizations, is that Honeywell breached a contract for sale of goods, that the alleged breach occurred on the January 1971 date of installation, and that the action, brought on August 14, 1975, is therefore barred.

Triangle urges, among other things, that the completed breach of contract did not occur until after Honeywell ceased in 1972 to attempt to correct the deficiencies in the programs.

■ The date when the breach of contract occurred depends on what the agreement between the parties was. The answers to interrogatories make it manifest that Triangle's claim from the inception of the litigation has been that Honeywell undertook to deliver in January 1971 an entire system, including not only hardware but the programs or "software" to be used in the hardware. The system was to be "turnkey" and ready to function immediately. A breach of that undertaking occurred in January 1971 when Honeywell allegedly delivered a defective system, and Triangle would have been entitled to bring suit forthwith.

■ Triangle has drawn nothing to the court's attention in the answers to interrogatories or the excerpts from depositions which would justify a finding that less than a full breach of the alleged agreement occurred when the January 1971 delivery was made. It is not suggested by Triangle that Honeywell had a conditional obligation, for example, to deliver a "turn-key" system on a specified date or in the alternative to

correct within a period of time a defective system. Triangle throughout has contended that Honeywell's duty to hand over a system fully capable of operation was unconditional. The breach of the alleged contract therefore occurred in January 1971 when Honeywell allegedly failed to perform its obligation.

Triangle contends that the system, which included the software, did not consist solely of "goods" within the meaning of the U.C.C, and that what was sold was predominantly "services". If that were true, not the U.C.C. four year statute of limitations, but the longer six year period applicable to actions on "contracts" generally would apply. New York C.P.L.R. § 213(2). Triangle cites no authority in support of the argument that a data processing system essentially involves the provision of services. The New York courts have not yet considered this question. In *F & M Schaefer Corp. v. Electronic Data Systems Corp.*, 430 F.Supp. 988, 992 (S.D.N.Y.1977) the court found that a data processing system was tangible and hence properly subject to replevin, but there the motion for replevin covered only the documentation. This court must therefore consider the nature of this sale in order to predict how a New York court might characterize the transaction.

The court concludes that a New York court would not find that the H–110 computer system principally consists of "services". The agreement with Honeywell did not contemplate that it would run a data processing service for Triangle but rather that Honeywell would develop a completed system and deliver it "turn-key" to Triangle to operate. After the installation and training period, Honeywell personnel were to withdraw, and Honeywell's major remaining obligation was to be maintenance. Although the ideas or concepts involved in the custom designed software remained Honeywell's intellectual property, Triangle was purchasing the product of those concepts. That product required efforts to produce, but it was a product nevertheless and, though intangible, is more

readily characterized as "goods" than "services". Intangibles may be "goods" within the meaning of U.C.C. § 2–106. *See, e. g., Silverman v. Alcoa Plaza Associates,* 37 A.D.2d 166, 323 N.Y.S.2d 39, 37 A.D.2d 166 (1st Dept. 1971). The system was subject to sale, and the services provided by Honeywell, design, installation, and maintenance, were incidental to that sale. Under these circumstances it is likely that a New York court would hold the sale subject to the U.C.C. statute of limitations.

Triangle suggests that the breach did not occur at the time of delivery and points to subsection (2) of § 2–725 reciting that where a warranty "explicitly extends to future performance of the goods and discovery of the breach must await such performance," the cause of action "accrues when the breach is or should have been discovered." But this subsection is of no help to Triangle. Such a warranty must expressly refer to the future, and the implied warranty alleged by plaintiff by its nature does not do so. Moreover, the express warranty alleged was to install a "turn-key" system fit for the purposes required by Triangle. Even if Triangle had alleged that Honeywell made an express warranty for future performance, the cause of action would accrue no later than the time of discovery. Yet, as noted, Triangle claims knowledge of breaches on the very first day of operations (Plaintiff's Interrog. Resp. 4(c)). Although Honeywell's alleged inability to correct the malfunction developed later, the essence of Triangle's claim is the alleged failure to provide a system operational from installation. That failure is asserted by Triangle to have been apparent in January 1971.

Several of Triangle's claims (Counts I, II and IX) assert that Honeywell defrauded and misled Triangle, and Triangle argues that these claims are governed by the six year statute of limitations applicable to actions for fraud. New York C.P.L.R. § 213(8).

However, in applying statutes of limitations to a complaint in which a claim arising out of one set of facts is based upon

a number of different theories, New York courts ordinarily look beyond the form of pleading to the essence or gravamen of the cause of action. *Western Elec. Co. v. Brenner,* 41 N.Y.2d 291, 293, 392 N.Y.S.2d 409, 410, 360 N.E.2d 1091, 1093 (1977), *State v. Cortelle Corporation,* 38 N.Y.2d 83, 378 N.Y. S.2d 654, 341 N.E.2d 223 (1975), *Brick v. Cohn-Hall-Marx Co.,* 276 N.Y. 259, 11 N.E.2d 902 (1937). In this case it is apparent that Triangle's fraud claims are simply restatements of the breach of contract claim. They therefore should not be treated as separate claims for statute of limitations purposes. Triangle alleges fraudulent or negligent misrepresentation which induced it to enter into the contract (Count I) and to allow the installation of the H–110 system (Count II). The essence of the fraud alleged in the counts is that Honeywell failed to perform its contractual obligations as it represented it would in negotiating the contract. The only other specific allegation of fraud is contained in Count IX and alleges that Honeywell should have known and yet failed to disclose that its system was not properly designed. Although Triangle characterizes this count as fraudulent concealment, it is based on Honeywell's breach of its contractual duty to provide a functional system.

In this case the basic claim is that Honeywell agreed to deliver a working system but failed to live up to its agreement. To permit Triangle to obtain a longer statute of limitations by characterizing the breach of the agreement as "fraud" would be inconsistent with the New York decisions.

Assuming *arguendo* that the counts of the second amended complaint which include allegations of negligence should be considered as tort claims for purposes of the statute of limitations, the counts are, as stated, governed by New York law. *Auten v. Auten, supra.* The relevant limitations period for negligence claims is three years. New York C.P.L.R. § 214(4). Triangle concedes that as a matter of general New York law a cause of action accrues upon occurrence of the negligent event. If the negligence asserted consisted of failing to design and deliver a working "turn-key" system, the tortious act and the resulting injury took place no later than January 1971.

Triangle urges that the negligence did not end there and that Honeywell's wrong continued during the period in which Honeywell employees attempted to repair the malfunctioning system. The continuous tort theory has primarily been applied in trespass cases where the action complained of is the continued existence of a harmful condition so that the injury did not occur at any particular point in time. *See Holdridge v. Heyer-Schulte Corp. of Santa Barbara,* 440 F.Supp. 1088, 1096 (N.D.N.Y.1977). Here Triangle does not assert that Honeywell continuously made matters worse by its repair efforts from early 1971 to 1972. There is no suggestion that the defective system created a continuing risk during this period. There is no basis for finding a continuous tort.

Alternatively Triangle suggests that Honeywell be considered as having engaged in professional malpractice. In such cases the New York courts have applied the continuous treatment doctrine and held that the statute of limitations does not commence to run until the professional relationship has ended. The doctrine has been extended to non-medical professionals such as lawyers, *Siegel v. Kranis,* 29 A.D.2d 477, 288 N.Y.S.2d 831 (2d Dept. 1968), accountants, *Wilkin v. Dana R. Pickup & Co.,* 74 Misc.2d 1025, 347 N.Y.S.2d 122 (S.Ct. Allegany Co. 1973), and architects, *County of Broome v. Vincent J. Smith, Inc.,* 78 Misc.2d 889, 358 N.Y.S.2d 998 (S.Ct. Broome Co. 1974). The complaint need not formally allege professional malpractice. In *Colpan Realty Corp. v. Great American Insurance Co.,* 83 Misc.2d 730, 373 N.Y.S.2d 802 (S.Ct. Westchester Co. 1975), the doctrine was applied to a complaint alleging that an insurance company breached its contractual duty to defend. *See also Holdridge v. Heyer-Schulte Corp. of Santa Barbara, supra.*

This exception to the ordinary limitations period is based on the degree of

reliance involved in a professional relationship: a plaintiff should not be expected to interrupt a continuing course of treatment by bringing suit. *Holdridge v. Heyer-Schulte Corp. of Santa Barbara, supra,* 440 F.Supp. at 1099. In the case at bar, however, the necessary continuing professional relationship did not exist. Honeywell was not responsible for the continuous running of a data processing system for Triangle. Honeywell agreed to develop and install a system Triangle could operate. Despite the specialized nature of the computer field Triangle was fully able to and did discover the malfunctioning from the moment of installation. Any continuing relationship between the parties after that time consisted of Honeywell's efforts to repair the system. The effort of a manufacturer to repair a defective product is not the "continuous treatment" contemplated by the professional malpractice cases. Although the *Holdridge* case did extend the doctrine to the manufacturer of a defective medical device, the court reasoned that plaintiff was relying on the professional skill of his doctor and that the limitations period should therefore not begin to run until the physician's underlying treatment had ended. 440 F.Supp. at 1099.

Triangle finally argues that Honeywell is equitably estopped from raising the statute of limitations as a defense. The contention is that Honeywell fraudulently concealed the errors in the system and continued to reassure Triangle and to attempt to repair the system until September 1972.

As stated previously, Triangle's claim of alleged fraud does not state an independent cause of action but is inseparable from the claim of breach of contract. Even if Triangle's allegations are construed as a claim of concealment after installation of the extent of the deficiencies of the system (a construction hardly consistent with Triangle's assertion of its discovery of the defects from the inception), there is no showing that as a result of the concealment Triangle delayed bringing this action.

Triangle also maintains that Honeywell's attempts to repair the system should toll the running of the statute of limitations. This argument has been rejected by the majority of jurisdictions, including New York, *Thalrose v. General Motors,* 8 U.C.C.Rep.Serv. 1257, *aff'd without opinion,* 343 N.Y.S.2d 303 (N.Y.S.Ct.1971), and Triangle presents no reason to believe that a higher New York court would rule differently.

Counts I through V alleging breach of contract are barred by the four year statute of limitations. Counts VI through IX alleging negligence are barred by the three year statute of limitations. Honeywell's motion for summary judgment is granted, and the second amended complaint is dismissed.

So ordered.